# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 17, 2010

No. 09-10482

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

TODD LOFTIS,

Defendant

LISA LOFTIS,

Movant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, SMITH, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Lisa Loftis ("Lisa") appeals the district court's Final Order of Garnishment, which set aside a community property partition agreement entered into between Lisa and her husband, Todd Loftis ("Todd"). She contends that the district court erroneously found the partition agreement to be a fraudulent transfer, and she challenges the scope of the garnishment ordered. We reject her arguments and affirm.

No. 09-10482

## FACTS AND PROCEEDINGS

This garnishment proceeding arose out of Todd's conviction for conspiracy to defraud the United States with false and fraudulent claims. From 1998 to 2004, Todd, as the president of Tools and Metals, Inc. ("TMI"), directed TMI employees to inflate the cost of tools that were purchased by Lockheed Martin, a Department of Defense ("DOD") contractor. The inflated costs were then passed on to the government. Todd also directed TMI employees to conceal the conspiracy by destroying invoices and removing evidence from TMI computers.

DOD began investigating Todd and TMI in 2002. Its investigator contacted Lockheed employees and counsel, former employees of TMI, as well as other companies doing business with TMI. Sometime around September 1, 2004, an investigator visited TMI's offices. A TMI employee told Todd about the investigator's visit and gave him the investigator's business card.

Shortly before the investigator's visit, the Loftises' attorney, James Wyss, recommended that the couple execute a community property partition agreement as part of their estate planning. Wyss considered Todd to be a "high risk professional" because of Todd's high net worth and his position as the president of a large company that had recently been sold. Wyss typically advises high risk professionals "to move assets from one spouse to another to preserve the acquired assets," and to protect assets from possible judgment creditors. The Loftises entered into a partition agreement, the subject of this lawsuit, in early September 2004, though the exact date is unclear. Under the agreement, Lisa received assets valued at $2,337,777.16. The partition agreement values the property received by Todd at $2,000,000, though the government disputes this valuation. The agreement did not allocate the Loftises' $1,000,000 home in Colleyville, Texas (referred to by the parties as the "Hawthorne House"). A later

conversion of the Hawthorne House to Lisa's separate property has been set aside as fraudulent in a related proceeding.[1]

Todd was officially notified of the criminal investigation by the United States Attorney's office in Fort Worth, Texas on October 1, 2004, no more than a month after entering into the agreement. He was charged by information and pleaded guilty after signing a factual basis admitting the allegations of fraud detailed above. The district judge sentenced Todd to eighty-seven months' imprisonment and ordered him to make restitution in the amount of $20,000,000.

The government filed two applications for writs of garnishment to recover the restitution and sought to garnish property transferred to Lisa under the partition agreement. The two proceedings were consolidated in the district court. Though Todd did not make an appearance in the garnishment proceeding, Lisa appeared as a party-in-interest and filed motions to quash the writs, arguing that the partitioned property was exempt from garnishment because it was her separate property. She further sought to limit the government's ability to garnish the couple's jointly managed community property to Todd's one-half interest.

The district court denied in part and granted in part Lisa's motions, finding it likely that the government would be able to show that the partition agreement was fraudulent. Though the district court initially granted Lisa's motion to quash to the extent the government sought to garnish Lisa's interest in the couple's jointly managed community property, the court later reversed this holding on the government's motion to reconsider, finding instead that the entirety of the couple's jointly managed community property was subject to garnishment. The court further held that Todd's interest in Lisa's retirement

---

[1] This transfer took place on November 12, 2004, over a month after DOD informed Todd that he was under criminal investigation.

No. 09-10482

savings account could be garnished, even though this asset was Lisa's solely managed community property.

The government then moved for summary judgment to set aside the partition agreement under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3304(b)(1)(A), 3304(b)(1)(B), 3304(a)(1), as well as under TEX. FAM. CODE § 4.106(a). The district court held that the agreement was voidable under each provision. This timely appeal followed.

## DISCUSSION

### A. Fraudulent Transfer

The district court did an extensive analysis of the various FDCPA provisions and held that the partition agreement was voidable under each provision argued by the government.[2] The partition agreement is clearly voidable under 28 U.S.C. § 3304(b)(1)(B)(ii), and we affirm on that basis. Because this court may affirm on any legally sufficient ground raised below, *BMG Music v. Martinez*, 74 F.3d 87, 89 (5th Cir. 1996), we decline to address all of the provisions analyzed by the district court.

> Section 3304(b)(1)(B)(ii) states:
>
> Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation–
> . . . .
> (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor–
> . . . .
> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

---

[2] "We review a grant of summary judgment de novo, applying the same criteria as the district court." *In re Hinsley*, 201 F.3d 638, 642 (5th Cir. 2000) (quotation omitted).

No. 09-10482

The terms of § 3304(b)(1)(B)(ii) are satisfied and a transfer is voidable if the debtor (i) transferred assets without receiving reasonably equivalent value (ii) when he reasonably should have believed he would incur a debt beyond his ability to pay.[3]

The district court determined that the value of the assets received by Todd, though estimated at $2,000,000 in the agreement, was not reasonably equivalent to the $2,337,777.16 in assets transferred to Lisa. Reasonably equivalent value means that "the debtor has received value that is substantially comparable to the worth of the transferred property." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 548 (1994) (interpreting the same term in the Bankruptcy Code). Under the partition agreement, Todd received his nontransferable 401(k) account, a ten-percent membership interest in an LLC, and his future income. The parties mainly dispute the value of Todd's future income, since it is clear that most of the $2,000,000 valuation was attributed to this asset.

The value of an asset is determined from the creditor's point of view. *In re Hinsley*, 201 F.3d at 644. "The proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors." *Id.* (quotation omitted). As the district court correctly concluded, Todd's future income was of questionable worth from a creditor's perspective when the partition agreement was executed, *see id.* ("Value is determined as of the date of transfer."). At the time the partition was completed, the government was investigating Todd's extensive fraudulent conduct; he potentially faced a lengthy prison term and a sizable criminal restitution. That is not to say that Todd's future income was worthless, *cf. Calmes v. United States*, 926 F. Supp. 582, 590

---

[3] Title 28, United States Code, section 3307(a) provides a defense to garnishment under § 3304(b) to "a person who took in good faith and for reasonably equivalent value." Because Lisa did not receive reasonably equivalent value in the agreement, *see infra*, she is not entitled to this defense.

(N.D. Tex. 1996), but the asset cannot bear the substantial value attributed to it by the agreement. Though we cannot determine with any precision on the current record the properly discounted value of Todd's future income at the time of the agreement, we agree with the district court that there is a great disparity between the value, from a creditor's perspective, of the minor assets Todd received in the agreement, including his speculative future income, and the $2,337,777.16 in assets transferred to Lisa.

This disparity is even greater when the Hawthorne House transfer is considered. Todd transferred his interest in the Hawthorne House to Lisa through a separate instrument two months after the partition.[4] Through this transfer, Todd divested himself of his interest in the couple's $1,000,000 home, his last remaining major asset. There is no doubt that the net effect of these two agreements was to move nearly all of Todd's tangible assets into his wife's hands. *See In re Hinsley*, 201 F.3d at 644 (finding no reasonably equivalent value when "the net effect of the partition and assignments was to remove the valuable assets from [the debtor's] ownership, making them unavailable to the judgment creditors."). Viewing these two agreements together, it is clear that Todd did not receive reasonably equivalent value.

Moreover, Todd should have reasonably believed that he was incurring debts beyond his ability to pay when he defrauded Lockheed and the government of millions of dollars. *See United States v. Resnick*, 594 F.3d 562, 567 (7th Cir. 2010) ("The second element [of § 3304(b)(1)(B)(ii)] was also satisfied because Resnick certainly should have believed that he was incurring debts beyond his

---

[4] Considering the Hawthorne House transfer together with the partition agreement is appropriate because the Loftises candidly admit that they intended for the Hawthorne House to be transferred at the same time as the partition agreement. *See Duncan v. First Nat'l Bank of Cartersville, Ga.*, 597 F.2d 51, 56–57 (5th Cir. 1979) (analyzing multiple transfers in fraud analysis under Georgia law); *see also In re Fisher*, 296 F. App'x 494, 500 (6th Cir. 2008) (unpublished) ("[W]e have recognized that transfers may be considered together when appropriate." (citing *In re Fordu*, 201 F.3d 693 (6th Cir. 1999))).

No. 09-10482

ability to pay when he defrauded Universal of millions of dollars . . . ."); *see also* 28 U.S.C. § 3002(3)(B) (defining "debt" to include money owed to the government on account of restitution). The district court therefore correctly set aside the partition agreement under § 3304(b)(1)(B)(ii) and held that the partitioned assets were not Lisa's separate property.[5]

## B. Garnishable Property

Lisa next challenges the scope of the garnishment. The district court held that the government was entitled to garnish Lisa's one-half interest in any community property that was jointly managed or solely managed by Todd. Lisa argues that this holding conflicts with this court's opinion in *Medaris v. United States*, 884 F.2d 832 (5th Cir. 1989). She further argues that the district court erroneously determined that the partitioned property was not her sole management community property.[6]

The FDCPA provides that "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." 28 U.S.C. § 3205(a). Lisa correctly states that she has a one-half ownership interest in the couple's community property under Texas law. *Broday v. United States*, 455 F.2d 1097, 1100–01 (5th Cir. 1972). But her ownership interest does not define what community assets may be seized by Todd's creditors, a question that is

---

[5] Because we find the partition agreement to be voidable under § 3304(b)(1)(B)(ii), we decline to address the district court's analysis of 28 U.S.C. §§ 3304(a)(1) and 3304(b)(1)(A), or TEX. FAM. CODE § 4.106(a).

[6] Lisa also contends that the district court issued writs of garnishment that exceeded the scope of the government's writ applications. The government's applications sought to garnish "the nonexempt property of Defendant, Todd Loftis . . . and his interest in the non-exempt property of his spouse . . . ." The language sufficiently covers the community property that the district court ordered garnished. The government has maintained throughout this proceeding that it is entitled to garnish jointly managed community property and Lisa cannot complain that she did not have notice of the government's intent to seize these assets.

determined by reference to whether the community assets are solely or jointly controlled. A spouse's solely managed community property is not subject to "any nontortious liabilities that the other spouse incurs during marriage." TEX. FAM. CODE § 3.202(b)(2). But any "community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage." *Id.* § 3.202(c). Section 3.202(c) permits the government to garnish Lisa's one-half interest in the couple's community assets that were jointly managed or solely managed by Todd. *See Nelson v. Citizens Bank & Trust Co. of Baytown, Tex.*, 881 S.W.2d 128, 131 (Tex. App. 1994).

This court's opinion in *Medaris*, discussing the enforcement of a federal tax lien, is not to the contrary. In the portion of *Medaris* relied on by Lisa, the court held that the IRS was entitled to attach the debtor's one-half interest in his wife's income because her income was a community asset. 884 F.2d at 833–34. The court reached this conclusion despite the earnings in question being the wife's sole management community property under state law. *Id.* at 833. As noted, sole management community property is ordinarily beyond the reach of a spouse's creditors for nontortious liabilities incurred during marriage. TEX. FAM. CODE § 3.202(b). This exemption, however, was inapplicable to the federal government because the Tax Code made such state law exemptions void as to tax liens. *Medaris*, 884 F.2d at 833–34 (citing 26 U.S.C. § 6334(c)).

Lisa contends that the *Medaris* court "treated the sole management community property as joint management community property, and concluded that the government could seize half (rather than none) of the property." Accordingly, Lisa argues that the government should be limited to seizing Todd's one-half interest in the couple's community property, including jointly managed property. Contrary to Lisa's suggestion, there is no indication that the *Medaris* court treated the spouse's earnings as joint management community property.

Rather, the court held that a provision of state law that would otherwise bar a creditor from attaching sole management property was inapplicable to tax liens.[7] The *Medaris* court had no occasion to interpret the equivalent of TEX. FAM. CODE § 3.202(c) when discussing whether the government could attach the spouse's wages, because that provision is only applicable to property "subject to [the debtor] spouse's sole or joint management, control, and disposition." The relevant property in *Medaris* was the non-debtor wife's solely managed property. Section 3.202(c) is implicated here and renders all jointly managed community property subject to the nontortious liabilities incurred by Todd.

Finally, Lisa argues that all of the partitioned property is her sole management community property, and so the government can only garnish Todd's one-half interest in these assets. "During marriage, each spouse has the sole management, control, and disposition of the community property that the spouse would have owned if single . . . ." TEX. FAM. CODE § 3.102(a). Property that a spouse would have owned if single includes personal earnings, revenue from separate property, personal injury recoveries, and "the increase and mutations of, and the revenue from" the spouse's sole management property. *Id.* §§ 3.102(a)(1)–(4). Other community property is presumed to be joint management property unless the spouses provide otherwise by power of attorney in writing or other agreement. *Id.* § 3.102(c). Further, when the sole management property of one spouse is mixed or combined with the other

---

[7] The Mandatory Victims Restitution Act makes a restitution order enforceable to the same extent as a tax lien. 18 U.S.C. § 3613(c); *see United States v. Meux*, 597 F.3d 835, 838 (7th Cir. 2010) (stating that "[l]iens based on restitution orders are treated like tax liens" (quotation omitted)). Consequently, the district court also correctly held that the government could garnish Todd's one-half interest in any community property solely managed by Lisa, including her retirement savings account. 28 U.S.C. § 3003(b)(1) ("This chapter shall not be construed to curtail or limit the right of the United States under any other Federal law or any State law . . . to collect taxes or *to collect any other amount collectible in the same manner as a tax*." (emphasis added)); *see Medaris*, 884 F.2d at 833–34.

No. 09-10482

spouse's sole management property, the commingled property is considered to be jointly managed property, absent a written agreement to the contrary. *Id.* § 3.102(b).

Lisa has not attempted to show that any particular asset, other than her retirement savings account, consisted of sole management property that was not commingled with Todd's property. Indeed, when pressed at oral argument before the district court, the only sole management property her counsel could specifically identify was the retirement savings account. The partitioned assets consisted mostly of the couple's joint savings or assets attributable to Todd's income and stock sales, and assets purchased with those funds. These are not assets that Lisa would have "owned if single." TEX. FAM. CODE § 3.102(a). The district court was correct to treat these assets as jointly managed property.

## CONCLUSION

For the reasons stated, the judgment of the district court is AFFIRMED.