**Motions for Rehearing Denied; Opinion of April 3, 2014 Withdrawn; Reversed and Remanded and Substitute Opinion filed May 29, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00349-CV

---

### DRAKE INTERIORS, L.L.C., Appellant

### V.

### ANDREA MARIE THOMAS AND ROBERT WARREN THOMAS, Appellees

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2009-22182**

---

## SUBSTITUTE OPINION

We deny the motions for rehearing, withdraw our opinion dated April 3, 2014, and issue this substitute opinion in its place.

This case involves two questions. Can an abstract of judgment create a valid lien on a home jointly managed as community property if the judgment is based on the premarital debt of only one spouse? If so, what is the effect of a homestead

designation after a divorce when the property ceases to be held in community? The trial court ruled in favor of the current homeowner, declaring that the judgment creditor could have no lien on the property. We conclude that the judgment creditor may have a valid lien if the lien attached during marriage, but there is insufficient proof of whether the lien did attach or whether the property was protected as a homestead when the abstract was first recorded. Accordingly, we reverse the declaratory judgment in favor of the homeowner and remand for additional proceedings.

## BACKGROUND

The judgment creditor in this case is Drake Interiors, L.L.C. In February 2000, Drake sold building materials to a Texas limited partnership known as Eastern Bloc Entertainment. The materials were to be used in the construction of a nightclub that Rob Thomas was planning to open. Rob is the sole manager of a Texas limited liability company named Altar Boys Management, and Altar Boys is the general partner of Eastern Bloc.

In 2001, Drake filed a suit on a sworn account against Eastern Bloc, alleging that it had not been paid in full for the goods sold in the nightclub project. No other defendants were joined in the lawsuit. Eastern Bloc never answered or appeared, and a default judgment was taken against it.

Drake filed a second action against Eastern Bloc in June 2002 complaining about the same nonpayment of goods. Joined in the lawsuit were Rob, Altar Boys, and another limited partnership managed by Altar Boys. Drake alleged in this action that Rob and Eastern Bloc had executed a promissory note in October 2000, which was meant to cover the goods furnished in the nightclub project. According to Drake, Rob breached the note by delivering only the first payment.

2

Drake acknowledged in its petition that it had obtained an earlier judgment against just Eastern Bloc. Drake alleged that the judgment remained unsatisfied, and it sought to hold Rob and Altar Boys liable because they had acted before as general partners of Eastern Bloc. Drake also alleged that Altar Boys was Rob's alter ego, and that Rob was liable because he had accepted a fraudulent transfer of assets from Eastern Bloc, which was then insolvent.

In October 2002, during the pendency of the lawsuit, Rob married his wife Andrea. In 2003, Rob and Andrea acquired a townhome known as the Asbury Property, which they held as their joint management community property.

The record does not reveal whether Rob raised any defenses in Drake's second lawsuit against Eastern Bloc. All that is known is that Drake obtained a final judgment in 2004 in the amount of $44,856.95. The judgment was made subject to a Rule 11 settlement agreement, which provided that all liabilities would be discharged if Rob and his companies timely paid the lower sum of $24,856.95, plus interest. The settlement agreement specified that payments were to be made in monthly installments. In the event of a default, the settlement agreement entitled Drake to collect on the full amount of the final judgment.

Rob defaulted under the settlement agreement on an undisclosed date. The parties appear to be in agreement that the default occurred during Rob's marriage to Andrea.

In 2006, while still married to Rob, Andrea purchased a lot known as the Queenswood Property, on which she and Rob planned to build a luxury custom home. The Queenswood Property was acquired in Andrea's name only and she held it as her sole management community property.

3

In January 2008, Drake abstracted the judgment from its second suit and recorded the abstract in Harris County, where both the Asbury Property and the Queenswood Property are located. The abstract named Rob but not Andrea because Andrea did not participate in the underlying proceeding. Drake also filed notices of lis pendens on the two properties.

Rob and Andrea separated shortly after Drake abstracted its judgment. Rob vacated the Asbury Property in February 2008 and began living with a friend. In August 2008, Andrea vacated the Asbury Property and moved into the Queenswood Property, where construction had recently been completed. The Asbury Property was immediately leased to a third party.

Rob and Andrea divorced on December 31, 2008. Under the final decree of divorce, Andrea was awarded the Queenswood Property, which she designated as her homestead effective January 1, 2009. The divorce decree also awarded Andrea full ownership of the Asbury Property. The trial court ordered Rob to convey his interest in the Asbury Property within fifteen days of the decree. Rob signed his general warranty deed on January 8, 2009.

Drake filed this action for declaratory relief in April 2009. Drake originally sought declarations stating that its abstract of judgment created a valid lien against both the Asbury Property and the Queenswood Property. Drake subsequently nonsuited its claims regarding the Queenswood Property, and limited its requests for relief to just the Asbury Property. Drake specifically sought a declaration stating that it was entitled to execute against the Asbury Property.

Rob and Andrea made separate appearances in the suit. Rob filed a general denial pro se, and that was his only responsive pleading throughout the entire course of the proceedings. Andrea asserted several affirmative defenses, a counterclaim for declaratory relief, and a separate counterclaim for tortious

4

interference with property. By May 2011, the time of her live pleading, Andrea had returned to the Asbury Property and had claimed it as her homestead. Andrea asserted that the Asbury Property was exempt from forced sale, and she sought a declaration stating that Drake's judgment lien was invalid. For her tortious interference claim, Andrea sought cancellation of the notice of lis pendens.

Andrea filed a motion for partial summary judgment on traditional and no-evidence grounds. She argued that the Asbury Property was not liable for Rob's premarital debt. She moved to invalidate the lien because the debt was not hers, there was no evidence of a community debt, and she was never called to appear in the suit from which the lien arose. On alternative grounds, Andrea also argued that the lien was invalid because of the statute of frauds and res judicata. Drake filed a response and cross-motion for partial summary judgment. Drake asserted that it had observed all proper formalities with recording its lien. Drake further contended that the Asbury Property was subject to the liabilities incurred by Rob before marriage and that the lien attached to the Asbury Property no later than August 2008, when Rob and Andrea ceased living there.

The trial court granted Andrea's motion for partial summary judgment and denied Drake's motion for partial summary judgment. The court declared in its order that "Drake Interiors, LLC has no lien on or claim to an interest in [the Asbury Property], and that Drake Interior[s], LLC's judgment lien . . . is . . . null and void and of no force and effect as to [the Asbury Property]." Andrea's remaining counterclaim for tortious interference was tried to a jury, which returned a take-nothing verdict. The trial court awarded attorney's fees solely to Andrea. Drake now appeals from the final judgment.

For ease of reference, we recite the material events in this case in chronological order. Specific dates are noted where available:

- Feb. 2000—Drake sells building materials to Eastern Bloc.

- Oct. 6, 2000—Rob signs a promissory note to Drake.

- Jan. 10, 2001—Drake files its first suit against Eastern Bloc.

- Apr. 10, 2001—Drake obtains a default judgment.

- June 5, 2002—Drake files its second suit against Eastern Bloc. Rob is also named as a defendant, but not Andrea.

- Oct. 25, 2002—Rob and Andrea marry.

- Sept. 8, 2003—Rob and Andrea acquire the Asbury Property.

- Oct. 25, 2004—Drake obtains an agreed judgment against Rob and his companies, but not Andrea.

- July 7, 2006—Andrea acquires the Queenswood Property in her name only.

- Jan. 18, 2008—Drake records its abstract of judgment.

- Feb. 2008—Rob vacates the Asbury Property and moves in with a friend.

- May 14, 2008—Andrea files for divorce.

- Aug. 1, 2008—Andrea vacates the Asbury Property and moves into the Queenswood Property. The Asbury Property is leased to a third party.

- Dec. 31, 2008—Rob and Andrea divorce.

- Jan. 1, 2009—Andrea designates the Queenswood Property as her homestead.

- Jan. 8, 2009—Rob conveys his interest in the Asbury Property to Andrea.

- Apr. 9, 2009—Drake files this suit against Rob and Andrea.

- Dec. 27, 2010—Andrea moves back into the Asbury Property.

- Jan. 1, 2011—Andrea designates the Asbury Property as her homestead.

## ISSUES PRESENTED

Drake asserts two issues in this appeal. In its first issue, Drake argues that the trial court erred by declaring that the abstract of judgment did not create a valid lien that attached to the Asbury Property. Drake requests that we reverse this declaration and render judgment declaring that the lien did attach to the Asbury

Property. If we reverse the declaratory judgment, Drake argues in its second issue that we should also reverse the award of attorney's fees because that award was based entirely on the relative success of the parties. Andrea requests that we affirm both the declaratory judgment and the award of attorney's fees. She argues further that a portion of the attorney's fees can be affirmed even if the declaratory judgment is reversed. Rob has not filed a brief.

## STANDARD OF REVIEW

Declaratory judgments rendered by summary judgment are reviewed under the same standards that govern summary judgments generally. *See Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*, 340 S.W.3d 552, 557 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). We review the trial court's summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional motion for summary judgment, the movant carries the burden of showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

In a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Timpte*

7

*Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We will sustain a no-evidence motion for summary judgment when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). The evidence is insufficient if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence, determine all questions presented, and render such judgment as the trial court should have rendered. *See Commr's Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). We may affirm the judgment, reverse and render a judgment for the other side if appropriate, or reverse and remand if neither party has met its summary judgment burden. *See Grynberg v. Grey Wolf Drilling Co.*, 296 S.W.3d 132, 136 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Each party bears the burden of establishing that it is entitled to judgment as a matter of law, and neither side can prevail based on the other's failure to discharge its burden. *Id.*

## JUDGMENT LIENS AND HOMESTEAD RIGHTS

A judgment lien is created by filing and indexing an abstract of judgment. *See Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 38 (Tex. App.—Houston

8

[1st Dist.] 2011, no pet.); *Jong Ik Won v. Fernandez*, 324 S.W.3d 833, 834–35 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Once the abstract is properly recorded, it constitutes a lien on and attaches to all nonexempt real property of the judgment debtor. *See* Tex. Prop. Code § 52.001. Generally, a lien may not attach to property that is held as the debtor's homestead, which is protected from all debts except those delineated by the Texas Constitution. *See* Tex. Const. art. XVI, § 50; *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 634 (Tex. 1987). If the property is exempt because it is the debtor's homestead, the lien will attach only when the property has lost its homestead character. *See Fairfield Fin. Group, Inc. v. Synnott*, 300 S.W.3d 316, 321 (Tex. App.—Austin 2009, no pet.); *Posey v. Commercial Nat'l Bank*, 55 S.W.2d 515, 517 (Tex. Comm'n App. 1932, judgm't adopted). At that point, the lienholder acquires an interest in the property no greater than that held by the judgment debtor. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 131 (Tex. 1991); *Johnson v. Darr*, 114 Tex. 516, 520–21, 272 S.W. 1098, 1099 (1925); *Gaona v. Gonzalez*, 997 S.W.2d 784, 786 (Tex. App.—San Antonio 1999, no pet.).

Property that has been designated as a homestead will only lose its homestead character through abandonment, death, or alienation. *See Florey v. Estate of McConnell*, 212 S.W.3d 439, 443–44 (Tex. App.—Austin 2006, pet. denied); *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied). Abandonment of a homestead occurs when the homestead claimant ceases to use the property and intends not to use it as a homestead again. *See Churchill v. Mayo*, 224 S.W.3d 340, 345 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Merely changing residences is not an abandonment of the homestead. *See Rancho Oil Co. v. Powell*, 142 Tex. 63, 69, 175 S.W.2d 960, 964 (1943); *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 808 (Tex. App.—Austin 2004,

9

pet. denied). Nor does temporary renting of the homestead constitute an abandonment. *See* Tex. Const. art. XVI, § 51; *Hollifield v. Hilton*, 515 S.W.2d 717, 721 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.). Homestead rights have historically enjoyed great protection in our jurisprudence, and once a homestead has been shown to exist, we presume that the homestead continues in the absence of evidence to the contrary. *See Patterson v. First Nat'l Bank of Lake Jackson*, 921 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1996, no writ). Proof of abandonment "must be undeniably clear and beyond almost the shadow, at least all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption." *See Gouhenant v. Cockrell*, 20 Tex. 96, 98 (1857); *accord Burkhardt v. Lieberman*, 138 Tex. 409, 416, 159 S.W.2d 847, 852 (1942).

If a homestead claimant is married, the homestead cannot be abandoned without the consent of the claimant's spouse. *See* Tex. Prop. Code § 41.004. A claimant is entitled to only a single homestead at once. *See Silvers v. Welch*, 127 Tex. 58, 62, 91 S.W.2d 686, 687 (1936). The plea of homestead is an affirmative defense, and the claimant bears the initial burden of proving the existence of the homestead. *See Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex. 1972); *Watson v. Tipton*, 274 S.W.3d 791, 800 (Tex. App.—Fort Worth 2008, pet. denied).

## ANDREA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Rob's Premarital Debt

Andrea moved for declaratory relief on four separate theories. We consider the first and second theories together because they are so closely related. In her first theory, Andrea argues that the lien is invalid because Andrea was not named in either the lawsuit or the judgment from which the lien originated. In her second

theory, Andrea argues that the lien is invalid because there is no evidence of a "community debt" for which the Asbury Property might be liable. With both theories considered together, Andrea essentially contends that Drake can never reach the Asbury Property because the lien represents a judgment for only Rob's premarital debt.

### 1. Section 3.202(c) of the Texas Family Code and Former Section 5.61(c)

The questions presented in this case turn on the statutory rules of marital property liability. We apply the traditional rules of construction when interpreting a statute. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). These rules instruct that our primary objective is to ascertain and give effect to the legislature's intent, as expressed by the statute's language. *Id.* We construe the statutory text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Id.*

Section 3.202(c) of the Texas Family Code provides: "The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage." This language is clear and unambiguous. If a husband incurs a debt before he marries, the creditor may reach his marital property in satisfaction of the debt, even if that property is jointly managed by his non-debtor wife. There is no dispute that the Asbury Property was Rob and Andrea's joint management community property. Accordingly, if the lien attached during marriage, then Drake can reach any nonexempt community interest in the Asbury Property. Andrea cannot invalidate the lien simply because the debt was not hers.

11

Our statutory construction is guided by *Carlton v. Estate of Estes*, a case applying the predecessor to Section 3.202(c). *See* 664 S.W.2d 322 (Tex. 1983) (per curiam). In *Carlton*, the question was whether a wife's interest in joint management community property could be reached to satisfy the debts of her husband if the wife was not joined in the lawsuit from which the debts arose. The court examined former section 5.61(c) of the Texas Family Code, which differed only slightly from the statute now in effect. The textual difference is noted as follows: "The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by *him or her* before or during marriage." *See* Act effective Jan. 1, 1970, 61st Leg., R.S., ch. 888, § 1, 1969 Tex. Gen. Laws 2707, 2730 (emphasis added). The court stated that there was no language in this provision expressly requiring the joinder of both spouses in the lawsuit. *See Carlton*, 664 S.W.2d at 322–23. The court accordingly held that the wife's interest in her joint management community property could be reached to satisfy the liabilities of her husband. *Id.* at 323.

As with the wife in *Carlton*, Andrea did not need to be named in the earlier lawsuit or judgment for Drake to reach community assets jointly managed by her and Rob. Section 3.202(c) makes the entirety of the joint management community property subject to the liabilities of a debtor spouse. *See, e.g.*, *United States v. Loftis*, 607 F.3d 173, 178 (5th Cir. 2010) (government could garnish wife's one-half interest in joint management community property to satisfy liabilities of her husband); *Nelson v. Citizens Bank & Trust Co. of Baytown, Tex.*, 881 S.W.2d 128, 131 (Tex. App.—Houston [1st Dist.] 1994, no writ) (wife's interest in joint management community property is subject to debt incurred individually by husband); *Gensheimer v. Kneisley*, 778 S.W.2d 138, 140 (Tex. App.—Texarkana 1989, no writ) (abstract of judgment against husband constituted a valid lien

against the entirety of the property held jointly in community by husband and wife); *Hanif v. Clarksville Oil & Gas Co.*, No. 06-09-00110-CV, 2010 WL 2105936, at *4 (Tex. App.—Texarkana May 27, 2010, no pet.) (mem. op.) (judgment creditor could reach stock certificates owned in the name of judgment debtor's wife where stock certificates were found to be joint management community property). Thus, to the extent it is not impressed with homestead rights, the Asbury Property may be reached in satisfaction of Rob's premarital debt.

Andrea contends that *Carlton* is inapplicable for two reasons. First, she argues that *Carlton* may be distinguished because the debt in that case was incurred during marriage, whereas Rob's debt was premarital. This is not a meaningful distinction. Under the plain language of the statute, joint management community property may be subject to liabilities that were incurred either "before or during marriage." *See* Tex. Fam. Code § 3.202(c).

Andrea argues next that *Carlton* may be distinguished because it relied on the former Section 5.61(c), which Andrea claims is substantively different from the current Section 3.202(c). The only difference between these two provisions is the use of gender-neutral pronouns, as illustrated in this side-by-side comparison:

**Former Section 5.61(c)**

The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by him or her before or during marriage.

**Current Section 3.202(c)**

The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage.

The change in the modern statute is stylistic, not substantive. We conclude that *Carlton* is still authoritative in cases involving Section 3.202(c).

Andrea challenges our statutory construction on a grammatical level. She focuses on the indefinite article "a" and the definite article "the" that precede the two instances of the word "spouse" used in Section 3.202(c). Because the articles have different meanings, Andrea argues that the statute may not be construed in a manner that makes the community property of one specific spouse subject to the nontortious liabilities of "any spouse."

Andrea overstates the reach of the statute, and her error is in not recognizing the nature of joint management community property. By definition, community property that is jointly managed cannot belong to one spouse and not the other. If one spouse incurs a nontortious liability before or during marriage, the entire joint management community property may be reached to satisfy the liability. *See Gensheimer*, 778 S.W.2d at 140 ("[T]he abstract of judgment against [husband] constituted a valid lien against the entirety of the property held in community by [husband] and [wife]."). This result is apparent simply by substituting Rob's name in the statute: "The community property subject to [Rob's] sole or joint management, control, and disposition is subject to the liabilities incurred by [Rob] before or during marriage." There is no dispute that the Asbury Property was subject to the joint management of both Rob and Andrea. Therefore, the Asbury Property may be reached to satisfy Rob's debt.

### 2. Section 3.202(d) does not compel a different result.

Andrea's next argument is somewhat similar to her grammatical complaint. She claims that our statutory construction improperly subjects joint management community property to the nontortious liabilities of "either spouse." Andrea contends that this interpretation is unreasonable because the legislature used the phrase "either spouse" in Section 3.202(d), but not in Section 3.202(c). This argument invokes the rule that a court must not interpret a statute in a manner that

renders any part of the statute meaningless or superfluous. *See* Tex. Gov't Code § 311.021(2); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

Section 3.202(d) provides as follows: "All community property is subject to tortious liability of either spouse incurred during marriage." The operative language in this statute is "all community property" and "tortious liability." Thus, if a husband is adjudged negligent during marriage, the entire marital estate is placed at risk—the husband's sole management community property, the wife's sole management community property, and both spouses' joint management community property. This contrasts with Section 3.202(c), which restricts the types of marital property subject to nontortious liabilities. Under Section 3.202(c), if a husband incurs a debt before or during marriage, the creditor may reach the husband's sole management community property and both spouses' joint management community property—but not the wife's sole management community property. *See* James W. Paulsen, *The Unsecured Texas Creditor's Post-Divorce Claim to Former Community Property*, 63 Baylor L. Rev. 781, 787–88 (2011). Section 3.202(d) does not undermine our reading of Section 3.202(c). Both provisions can easily be given effect.

### 3. Andrea did not have to be a party in the underlying lawsuit.

Andrea relies on two other authorities in her effort to invalidate Drake's lien. She cites first to *Cooper v. Texas Gulf Industries, Inc.*, a case which recognized the abolishment of the doctrine of virtual representation. *See* 513 S.W.2d 200 (Tex. 1974). Under that former doctrine, a husband was said to have the sole power to manage the marital community, meaning that a suit naming only the husband was nonetheless binding on his wife. *Id.* at 202. The legislature formally abolished this doctrine in the first Texas Family Code. *See* Act effective Jan. 1, 1970, 61st Leg.,

15

R.S., ch. 888, § 1, 1969 Tex. Gen. Laws 2707, 2727 (current version at Tex. Fam. Code § 3.102). Under the new law, the supreme court held that "[t]he rights of the wife, like the rights of the husband and the rights of any other joint owner, may be affected only by a suit in which the wife is called to answer." *See Cooper*, 513 S.W.2d at 202. Andrea quotes this same language and asserts that any lien on community property is invalid unless she was made a party to the underlying lawsuit. We disagree.

As the supreme court stated in *Carlton*, "Virtual representation is applied only where one spouse has attempted to represent the interest of both spouses in a suit directly concerning the community property." *See Carlton*, 664 S.W.2d at 323. When Drake first sued Rob, the suit directly concerned Rob's premarital debt, not his community property. Rob was still unmarried and had yet to acquire any interest in the Asbury Property. Even if Rob and Andrea had been married at the time of the suit, Andrea did not need to be joined as a party. If the suit concerns only a debt, the creditor does not have to join both spouses in order to later reach assets jointly held in community. *See id.* at 322–23.

Andrea cites next to *Stewart Title Co. v. Huddleston*, 598 S.W.2d 321 (Tex. Civ. App.—San Antonio), *writ ref'd n.r.e. per curiam*, 608 S.W.2d 611 (Tex. 1980). In that case, an ex-husband was sued after his divorce and adjudged liable on a debt that had arisen during marriage. *Id.* at 322. The creditors abstracted the judgment against the ex-husband, who was then holding a property interest as a tenant in common with his ex-wife. *Id.* The ex-wife sued for a declaration that the lien was invalid against the land, or at least against her interest in the land post-divorce. *Id.* at 323. The creditors filed an answer and requested to foreclose on the interests of both the ex-husband and the ex-wife. *Id.* The trial court rendered a summary judgment declaring that the ex-wife's interest was not subject to the

16

creditors' abstracted judgment. *Id.* That decision was affirmed by the court of appeals, which cited the rule that no judgment against one party could be binding against another who was never called to appear. *Id.*

As with *Cooper*, Andrea argues that *Stewart Title* precludes Drake from attaching a lien to her property because her joinder was necessary in the underlying suit. Andrea specifically relies on the following language from the court of appeals:

> An abstracted judgment creates a lien only on the property of the judgment debtor and does not extend to land owned by those who are not parties to the judgment. . . . [The ex-wife's] interest in the land could be subjected to the payment of debts only on the basis of a judgment against her in a suit to which she was a party. This would have been true even if the judgment against [the ex-husband] had been rendered before he and [the ex-wife] were divorced.

*Stewart Title*, 598 S.W.2d at 323–24. We respectfully disagree with this final statement. If a judgment is obtained during marriage against the husband alone, his joint management community proper becomes subject to execution, even though his wife owns a community interest. *See* Tex. Fam. Code § 3.202(c). Under *Carlton*, the wife does not have to be joined in the lawsuit for the community property to be subject to her husband's liabilities. *See Carlton*, 664 S.W.2d at 323. We decline to follow *Stewart Title* to the extent it conflicts with *Carlton* and the plain language of Section 3.202(c). *See* Paulsen, *supra*, at 808–09 (criticizing this portion of *Stewart Title* as "plainly wrong").

In sum, we hold that Andrea cannot invalidate Drake's lien on the first two bases asserted in her motion for partial summary judgment. Section 3.202(c) allows creditors to reach joint management community property in satisfaction of both premarital and marital debts that were incurred by a single spouse. If Drake's lien attached during marriage, then the Asbury Property is liable. It is no defense

17

that the debt in question was not Andrea's or that she was not joined as a party in the underlying lawsuit.

## B.     Statute of Frauds

Andrea's third theory attacks the enforceability of the debt that underlies the judgment lien. Citing the statute of frauds, Andrea argues that the lien is invalid because there is no evidence of a written agreement signed by her in which she promised to pay for either Rob's judgment debt or the goods that were sold to Rob and his companies. *See* Tex. Bus. & Comm. Code §§ 2.201, 26.01. Without such evidence, Andrea contends that Drake cannot hold her or her property liable.

Andrea correctly asserts that there is no writing bearing her signature, but this issue is not dispositive. Drake filed this lawsuit seeking a declaration regarding the liability of her former community property. Drake did not seek to enforce an agreement by holding Andrea personally liable for a past debt. Under Section 3.202(c), a wife's joint management community property may be reached in satisfaction of her husband's debt, even if the wife had no role in incurring the debt. *See, e.g.*, *Nelson*, 881 S.W.2d at 131 (holding that wife was not personally liable for husband's debt, but wife's interest in joint management community property was subject to the debt). The statute of frauds does not operate to invalidate Drake's lien.

## C.     Res Judicata

Andrea's final theory raises the doctrine of claim preclusion, or res judicata. *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). This doctrine prevents the relitigation of a finally adjudicated claim and related matters that should have been litigated in a prior lawsuit. *See State & Cnty. Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001) (per curiam).

18

Andrea focuses on Rob's promissory note, which was executed before the commencement of Drake's first lawsuit against Eastern Bloc. Because Drake was necessarily aware of the note, Andrea argues that there was no reason for Drake to not litigate Rob's liability in that first action. She then contends that the second lawsuit should have been barred by res judicata because it involved the same subject matter as the first.

Despite her asserted bar of res judicata, Andrea does not contend that the second lawsuit resulted in a void judgment. She contends that the judgment is actually valid, but she argues that any lien arising from that judgment is effective only against Rob. Andrea cites no authority for this proposition, and it is not clear to this court how the doctrine of res judicata would require that unusually restrictive result. Res judicata is intended to bar subsequent collateral attacks on a final judgment. *See Segrest v. Segrest*, 649 S.W.2d 610, 613 (Tex. 1983). Its very purpose is "to preserve the sanctity of judgments." *See Abbott Labs. v. Gravis*, 470 S.W.2d 639, 642 (Tex. 1971). A court should not apply res judicata to deprive a prior judgment of its full legal effect. *See Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex. 1990) (judgment debtor's alter ego could not use res judicata to prevent creditor from fully enforcing the judgment).

If the underlying judgment is valid, as Andrea admits in her brief, then the resulting lien affects more than just Rob's separate property. Under the plain language of the Family Code, Rob's joint management community property is also subject to the liability. *See* Tex. Fam. Code § 3.202(c). That includes the Asbury Property if the lien attached during marriage. We reject Andrea's theory that res judicata precludes Drake from reaching her joint management community property.

## DRAKE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Having concluded that Andrea failed to carry her summary judgment burden, we now examine Drake's motion and consider whether Drake conclusively proved its entitlement to judgment as a matter of law. Drake sought two declarations in its live pleading, one declaring that the abstract of judgment created a valid judgment lien on the Asbury Property, and the other declaring that Drake is entitled to execute against the Asbury Property. Only the first declaration was specifically requested in Drake's motion for partial summary judgment.

As stated above, a properly recorded abstract of judgment creates a valid lien on and attaches to all nonexempt real property of the judgment debtor. *See* Tex. Prop. Code § 52.001. Drake asserted in its motion that it complied with all requirements in recording and indexing its abstract of judgment. Andrea has not contested that assertion on appeal. The only issue in the case, as stated by Drake, is whether its judgment lien attached to the Asbury Property.

A judgment lien may not attach to any real property that is exempt from seizure or forced sale. *See id.*; *Cadle Co. v. Harvey*, 46 S.W.3d 282, 285 (Tex. App.—Fort Worth 2001, pet. denied); *cf. Cornerstone Bank, N.A. v. Randle*, 869 S.W.2d 580, 586 (Tex. App.—Dallas 1993, writ dism'd) (concluding in the context of a related statute that "a lien attaches only to nonexempt property"). Drake offered two distinct theories of attachment. The first theory was that the lien attached on January 18, 2008, when Drake recorded its abstract of judgment. Drake argued that the Asbury Property was nonexempt at this time because Rob and Andrea had a present intent to change residences. They were in the process of building the Queenswood Property, and they intended to move into that property once construction was completed. Even though Rob and Andrea were still

20

occupying the Asbury Property, Drake argued that their intent to leave was sufficient by itself to render the property nonexempt.

Drake's second theory was that the lien attached no later than August 1, 2008. According to Drake, the Asbury Property was nonexempt at this time because both Rob and Andrea had vacated the property. Furthermore, Andrea had filed for divorce, and she and Rob were no longer living together.

Neither theory offered by Drake asserts that the lien attached automatically upon the simple act of recording. Both theories clearly reference two additional factors, Rob and Andrea's intent to leave the Asbury Property and their discontinued use of that property. These are the two elements of abandonment. *See Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex. 1971). Although Drake did not use the words "abandonment" or "homestead," that is essentially what it argued—that Rob and Andrea had abandoned the Asbury Property as their homestead.

The burden of proving abandonment rests on the party asserting it. *See Caulley v. Caulley*, 806 S.W.2d 795, 797 (Tex. 1991); *Gill v. Quinn*, 613 S.W.2d 324, 326 (Tex. Civ. App.—Eastland 1981, no writ). Drake raised the issue, but did not carry its burden as a matter of law. When the abstract of judgment was recorded on January 18, 2008, Rob and Andrea were still occupying the Asbury Property. Abandonment cannot be shown on this date because the evidence conclusively showed the opposite of discontinued use.

Drake conclusively proved that Rob and Andrea had vacated the Asbury Property by August 1, 2008, but there was no clear proof of an intent to never return. The evidence showed that the Asbury Property was leased to a third party, but the temporary renting of a homestead does not constitute an abandonment so long as the claimant has not designated another homestead. *See* Tex. Prop. Code § 41.003. Although Andrea was occupying the Queenswood Property, and would

21

later claim it as her homestead, the record contains no evidence of Rob's intentions. Drake suggests that there is an intent to abandon because Andrea had previously filed for divorce, but there is no indication that the parties knew how their property would be divided, or even that they would certainly fail to reconcile. Proof of abandonment must be "undeniably clear," and the evidence here does not rise that level. *See Gouhenant*, 20 Tex. at 98.

Drake argues that we should not reach the issue of abandonment because neither Rob nor Andrea established that a homestead existed before the abstract of judgment was recorded. *See Bennett v. State Nat'l Bank, Odessa, Tex.*, 623 S.W.2d 719, 722 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (proof of a homestead must predate the encumbrance, otherwise it is ineffective to destroy preexisting rights). But abandonment was the sole basis asserted by Drake for demonstrating that the Asbury Property was nonexempt. This theory of attachment assumed the existence of a homestead. As a counter-affirmative defense, abandonment sought to establish an independent reason why Rob and Andrea could not rely on a homestead protection, even if it had been pleaded and proved. Because Drake did not prove abandonment as a matter of law, the burden never shifted to Rob and Andrea to raise a fact question on abandonment, or otherwise establish a different defense for avoiding a summary judgment.

Drake has not argued that its lien attached at any other time during marriage. On the basis of this record, Drake has not shown that it is entitled to summary judgment as a matter of law.

## ATTORNEY'S FEES

We normally reverse the entire judgment, including the award of attorney's fees, when we determine that the trial court erred by entering a summary judgment. Andrea asks that we deviate from that rule in this case. She claims that a portion of

22

her attorney's fees is attributable to a partial summary judgment that Drake has not appealed. She argues that this portion should be affirmed, even if the judgment is otherwise reversed.

The trial court issued a single award of attorney's fees. There is no indication of what portion, if any, was specifically attributable to the unchallenged partial summary judgment. Not even Andrea has identified the specific sum she would like to have affirmed.

The parties may try the issue of attorney's fees again on remand. There is no basis for this court, after reversing the declaratory judgment in full, for affirming any award of attorney's fees.

## CONCLUSION

We reverse the trial court's judgment because neither party established its entitlement to declaratory relief as a matter of law. The cause is remanded for additional proceedings consistent with this opinion.


/s/     Tracy Christopher
        Justice

Panel consists of Justices Boyce, Christopher, and Brown.

23