Tracy Christopher, Justice
The question in this case is whether a husband and wife abandoned their homestead before they divorced. If the answer is no, then the wife, who was awarded the home in the divorce, took the home free and clear of a judgment lien arising out of the husband's premarital debt. On the other hand, if the answer is yes, then the lien attached during the marriage, and the judgment creditor may now be able to execute against the home.
The wife was granted a summary judgment on the ground that the home never lost its homestead protection. Because the creditor produced some evidence of abandonment in its summary-judgment response, we hold that the wife is not entitled to judgment as a matter of law. We also hold that the creditor is not entitled to judgment on its cross-motion for summary judgment because the evidence of abandonment is not conclusive. Consequently, we reverse the trial court's judgment and remand for additional proceedings.
BACKGROUND
Four years ago, these same parties appeared before us in a related appeal. We begin by discussing the facts and disposition of that appeal because they directly bear on the motions for summary judgment that are under review now.
I. The First Appeal
The origin of this case dates back to the year 2000, when Rob Thomas signed a promissory note to the predecessor-in-interest of Drake Interiors, Inc. The note arose out of the sale of goods, which were supposed to be used in the opening of a nightclub that Rob intended to manage. According to Drake, Rob only made a single payment under the note. To collect the outstanding balance, Drake sued Rob in 2002 and obtained a final judgment against him in 2004.
Rob got married during the pendency of Drake's suit. In 2003, he and his wife, Andrea, purchased a home, which we identify as "Asbury." That home is also where Rob and Andrea started their family.
In 2006, while still living at Asbury, Andrea purchased a second home in her name only. This home, which we identify as "Queenswood," became Andrea's sole management community property. Andrea demolished the home on Queenswood to make room for the construction of a luxury custom home for her and her family.
In January 2008, Drake abstracted its 2004 judgment against Rob. When the abstract was recorded, Rob and Andrea were still occupying Asbury, but construction on the new Queenswood residence was underway.
In February 2008, Rob and Andrea separated due to marital difficulties. Rob vacated Asbury and began living with a friend at the friend's apartment. Andrea remained at Asbury, along with the two children born of the marriage. In May 2008, Andrea petitioned for divorce.
On August 1, 2008, and while still separated from Rob, Andrea moved into the newly completed Queenswood residence, along with her children. On that same date, Andrea leased Asbury to a third party.
*452 Rob and Andrea divorced on December 31, 2008, when the family court rendered a final decree of divorce. Under the decree, Rob was divested of all interests he owned in Asbury and Queenswood, and Andrea was awarded full ownership of both properties. Andrea designated Queenswood as her homestead for tax purposes effective January 1, 2009.
In April 2009, Drake filed an action for declaratory relief, seeking declarations that its abstract of judgment created a valid lien against Asbury and that Drake was entitled to execute against Asbury. After the commencement of Drake's suit, Andrea and the children moved back into Asbury. In a 2011 pleading, Andrea asserted her homestead rights in Asbury as an affirmative defense to Drake's claims.
In a separate pro se appearance, Rob filed a general denial. Aside from that answer, he filed no other pleadings or motions in connection with the case.
Andrea moved for summary judgment on several grounds, but her primary argument was that Asbury could not be liable for a premarital debt incurred by Rob alone. Andrea did not specifically move for summary judgment on the basis that Asbury was protected as her homestead.
Drake filed a cross-motion for summary judgment, arguing that Asbury could be liable for Rob's premarital debt. Drake also argued, as a counter-affirmative defense, that its abstract of judgment attached to Asbury because Rob and Andrea abandoned Asbury as their homestead. Drake asserted two possible dates for attachment: the first being in January 2008, when the abstract of judgment was recorded; and the second being in August 2008, when neither Rob nor Andrea was living at Asbury.
The trial court granted Andrea's motion and denied Drake's motion. On appeal to this court, we held that Andrea was not entitled to summary judgment on any of the grounds asserted in her motion. We explained that Asbury was joint management community property, which meant that if it lost its homestead protection during the marriage, then it could be used to satisfy Rob's premarital debt.
We also held that Drake was not entitled to judgment on its cross-motion. We explained that abandonment required proof of two elements: discontinued use and an intent never to return. We determined that Drake conclusively established the first element, at least as of August 1, 2008. However, we determined that Drake did not conclusively establish the second element. On that point, we specifically noted that the record contained no evidence of Rob's intentions regarding Asbury.
Having decided that neither side was entitled to judgment as a matter of law, we reversed and remanded for additional proceedings. See Drake Interiors, L.L.C. v. Thomas , 433 S.W.3d 841, 855 (Tex. App.-Houston [14th Dist.] 2014, pet. denied).
II. Proceedings Since the First Appeal
On remand, the parties refined their arguments in light of our opinion, and they moved for summary judgment again.
Andrea filed a combined traditional and no-evidence motion. In the traditional portion of her motion, Andrea argued that she and Rob established Asbury as their homestead; that Asbury remained their one and only homestead for the entire course of their marriage; and that upon divorce, Rob's interest in Asbury passed to her free and clear of Drake's judgment lien. In the no-evidence portion of her motion, Andrea asserted that Drake had no evidence that she and Rob abandoned Asbury during their marriage.
*453 Drake filed a response, arguing that there was at least a fact question on the issue of abandonment. In support of its claim that Rob had abandoned Asbury, Drake referred to a mediated settlement agreement that Rob and Andrea had executed on August 1, 2008, the same date that Andrea had moved into the new home on Queenswood. In the MSA-which had not been included as evidence in the previous summary-judgment record-Rob agreed that Andrea should be awarded complete ownership of Asbury in the divorce. Because Rob had already vacated Asbury at the time of the MSA, Drake argued that the MSA manifested Rob's intent to never return to Asbury.
To show that Andrea had abandoned Asbury, Drake again referred to the MSA, where Rob further agreed that he would pay the insurance and property taxes on Queenswood until Andrea remarried or the younger of his two children reached the age of majority or graduated from high school, whichever occurred first. According to Drake, this agreement evidenced Andrea's intent to make Queenswood her permanent home.
In its cross-motion, Drake argued that the MSA conclusively established that Rob and Andrea had abandoned Asbury on August 1, 2008. As an alternative basis for summary judgment, Drake also referred to an agreed decree of divorce, which incorporated the terms of the MSA. Rob and Andrea signed the agreed decree on December 19, 2008, twelve days before the family court rendered the final decree of divorce. Claiming that the agreed decree also manifested the couple's intent to never return to Asbury, Drake argued that abandonment was conclusively established no later than December 19, 2008.
Once again, the trial court granted Andrea's motion and denied Drake's motion. After a nonjury trial on attorney's fees, the trial court rendered a final judgment in favor of Andrea, from which Drake now appeals.
STANDARD OF REVIEW
This case involves motions for summary judgment that were submitted on both traditional and no-evidence grounds. We review both types of motions de novo. See Boerjan v. Rodriguez , 436 S.W.3d 307, 310 (Tex. 2014) (per curiam).
In a traditional motion for summary judgment, the movant carries the burden of showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c) ; M.D. Anderson Hosp. & Tumor Inst. v. Willrich , 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). If the movant produces evidence that conclusively establishes its right to summary judgment, then the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue. See Centeq Realty, Inc. v. Siegler , 899 S.W.2d 195, 197 (Tex. 1995). We consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. See Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005).
In a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. See Tex. R. Civ. P. 166a(i) ; Timpte Indus., Inc. v. Gish , 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. See Mack Trucks, Inc. v. Tamez , 206 S.W.3d 572, 582 (Tex. 2006). We will sustain a no-evidence *454 motion for summary judgment when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. See City of Keller v. Wilson , 168 S.W.3d 802, 816 (Tex. 2005).
When both parties move for summary judgment and the trial court grants one motion and denies the other, we consider all questions presented, examine all of the evidence, and render the judgment the trial court should have rendered. See Commr's Court of Titus Cnty. v. Agan , 940 S.W.2d 77, 81 (Tex. 1997).
ANDREA'S MOTION
Based on the grounds asserted in her traditional motion for summary judgment, Andrea had the burden of proving that Asbury was her homestead during the course of her marriage. See Burk Royalty Co. v. Riley , 475 S.W.2d 566, 568 (Tex. 1972) (the initial burden is on the person claiming the homestead). To satisfy that burden, Andrea was required to prove that she and Rob had occupied Asbury and that they had intended to keep it as their homestead. See Cheswick v. Freeman , 155 Tex. 372, 287 S.W.2d 171, 173 (1956).
In the affidavit attached to her motion, Andrea testified that she and Rob purchased Asbury in 2003 with the intent of occupying it as their family home. She also testified that, since purchasing Asbury, she and Rob lived there continuously until February 2008. Rob supplied the same testimony in an affidavit, which was also attached to Andrea's motion. This evidence, none of which Drake has disputed, conclusively established that Rob and Andrea acquired Asbury as their homestead.
Once a property is impressed with homestead rights, the law presumes that the property continues as a homestead. See Sullivan v. Barnett , 471 S.W.2d 39, 43 (Tex. 1971). This homestead presumption, when applied to the facts of this case, leads to three interrelated conclusions.
First, for as long as Asbury remained Rob and Andrea's presumptive homestead, Drake's judgment lien could not attach, because the lien arises out of a debt that does not qualify under any of the constitutional exceptions for the forced sale of a homestead. See Tex. Const. art. XVI, § 50 ; Laster v. First Huntsville Props. Co. , 826 S.W.2d 125, 129 (Tex. 1991).
Second, if Rob owned an undivided homestead interest in Asbury, he could convey that interest to Andrea without depriving Drake of any rights, because Asbury's status as a presumptive homestead already removed Rob's interest from Drake's reach. See Almanza v. Salas , No. 14-12-01114-CV, 2014 WL 554807, at *3 (Tex. App.-Houston [14th Dist.] Feb. 11, 2014, no pet.) (mem. op.); Englander Co. v. Kennedy , 424 S.W.2d 305, 309 (Tex. Civ. App.-Dallas 1968) ("And notwithstanding the existence of judgments against such debtor he may convey his homestead to whom he pleases free and clear of judgment liens."), writ ref'd n.r.e. , 428 S.W.2d 806 (Tex. 1968) (per curiam).
Third, if the presumptive homestead in Asbury continued on December 31, 2008, when the final decree of divorce ordered the conveyance of Rob's interest in Asbury to Andrea, then Andrea acquired a complete interest in Asbury, free and clear of Drake's judgment lien. See Hankins v. Harris , 500 S.W.3d 140, 147 (Tex. App.-Houston [1st Dist.] 2016, pet. denied) (the wife's homestead interest passed to her husband upon divorce and prevented the attachment of a judgment lien arising out *455 of the wife's liability for slander); see also Tex. Civ. Prac. & Rem. Code § 31.001 ("A judgment for the conveyance of real property or the delivery of personal property may pass title to the property without additional action by the party against whom the judgment is rendered.").
These three conclusions do not invariably lead to the fourth conclusion that Andrea is entitled to summary judgment, because the homestead presumption can still be rebutted with evidence that the homestead was abandoned. See Zorrilla v. Aypco Constr. II, LLC , 469 S.W.3d 143, 160 (Tex. 2015). If Drake produced some evidence that Asbury was abandoned before December 31, 2008, then there would be a question of fact regarding Andrea's claim of homestead, and that fact question would be sufficient to defeat both her traditional motion and her no-evidence motion.
Abandonment occurs when the homestead claimant stops using the property and forms an intent to forsake it as a homestead. See McMillan v. Warner , 38 Tex. 410, 414 (Tex. 1873) ; Churchill v. Mayo , 224 S.W.3d 340, 345 (Tex. App.-Austin 2006, pet. denied). Because Asbury was acquired as a family homestead, belonging to both Rob and Andrea, abandonment could only be established upon proof that Rob and Andrea had stopped living at Asbury and that they had each formed an intent to forsake Asbury as their homestead.
Drake produced evidence regarding the first element of abandonment, discontinued use. In a deposition attached to Drake's response, Andrea testified that Rob had vacated Asbury in February 2008, and that she had vacated Asbury in August 2008. Andrea also represented that she began living at Queenswood on August 1, 2008, according to an application for a homestead exemption that she filed with the local taxing authority. This evidence showed that both Rob and Andrea had stopped living at Asbury no later than August 1, 2008, several months before they divorced.
To satisfy the second element of abandonment, Drake was required to produce some evidence that both Rob and Andrea intended to abandon Asbury as their homestead. Questions of intent are not always susceptible to direct proof, but circumstantial evidence may be supplied in its stead, which is what Drake produced here. See Spoljaric v. Percival Tours, Inc. , 708 S.W.2d 432, 435 (Tex. 1986).
Drake's circumstantial evidence included the MSA, which Rob and Andrea executed on August 1, 2008, a date when neither of them was still living at Asbury. By the terms of the MSA, Rob agreed to give his undivided interest in Asbury to Andrea. That agreement constitutes some evidence that Rob had formed an intent to never return to Asbury. See Spiegel v. KLRU Endowment Fund , 228 S.W.3d 237, 244 (Tex. App.-Austin 2007, pet. denied) (a husband's intent to abandon his homestead was evidenced by his agreement in an MSA to give the marital home to his wife).
Rob also agreed in the MSA that he would pay the insurance and property taxes on Queenswood until Andrea remarried or the younger of his two children reached the age of majority or graduated from high school. When Rob made this agreement, Andrea and the children had just begun living at Queenswood, a luxury custom home. A reasonable person could infer that, by bargaining for Rob's agreement, Andrea intended to make Queenswood her permanent home. Indeed, Drake's evidence also included Andrea's application to make Queenswood her homestead for tax purposes, effective January 1, 2009, the earliest possible date for which she could *456 claim the homestead exemption. This evidence supports a finding that Andrea had likewise formed an intent to forsake Asbury as her homestead. See Norman v. First Bank & Trust, Bryan , 557 S.W.2d 797, 802 (Tex. Civ. App.-Houston [1st Dist.] 1977, writ ref'd n.r.e.) ("Removal to a different residence and use and occupancy of it as a homestead, unaccompanied by any act evidencing an intention to return to his former home is evidence that a new homestead has been acquired and the old one abandoned.").
Viewing the evidence in the light most favorable to Drake, the nonmovant, we conclude that there is a fact question as to whether Asbury remained Rob and Andrea's homestead during the course of their marriage. Accordingly, Andrea was not entitled to judgment as a matter of law, and the trial court erred by granting her motion for summary judgment.[1]
DRAKE'S MOTION
In its cross-motion for summary judgment, Drake argued that Rob and Andrea abandoned Asbury as a matter of law. Because Drake was the movant on this issue, it was required to produce conclusive evidence of abandonment.
The "conclusive evidence" standard is more demanding than the "some evidence" standard that applied when Drake was just the nonmovant. Under the "some evidence" standard, Drake only needed evidence that "would enable reasonable and fair-minded people to differ in their conclusions." See City of Keller , 168 S.W.3d at 822. But under the "conclusive evidence" standard, the evidence must be of such a character that "reasonable people could not differ in their conclusions." Id. at 816. Typically, evidence is conclusive "when it concerns physical facts that cannot be denied" or "when a party admits it is true." Id. at 815.
The undisputed physical facts show that between August 1, 2008 and December 31, 2008, Andrea was living continuously at Queenswood. During at least a part of that time (and possibly all of it), Rob was living in a friend's apartment and a third party was renting Asbury. Because reasonable people could not differ in their conclusions that Rob and Andrea were no longer living at Asbury in the five-month period before their divorce, we conclude now, as we did in the previous appeal, that Drake conclusively established the first element of abandonment. See Drake Interiors , 433 S.W.3d at 854.
The second element of abandonment involves a question of intent, which concerns a person's state of mind. Because reasonable people may draw differing conclusions about a defendant's state of mind, depending on his or her credibility, intent questions are generally inappropriate for summary judgment, especially in the absence of an admission. See Frias v. Atl. Richfield Co. , 999 S.W.2d 97, 106 (Tex. App.-Houston [14th Dist.] 1999, pet. denied) ("Summary judgment should not be granted when the issues are inherently those for a jury, as in cases involving intent."); S.S. v. State Farm Fire & Cas. Co. , 808 S.W.2d 668, 670 (Tex. App.-Austin 1991) ("Summary judgment is rarely proper when the cause involves an issue inherently for the fact-finder, such as intent."), aff'd , 858 S.W.2d 374 (Tex. 1993).
*457 Nevertheless, Drake argues that summary judgment is appropriate in this case because the evidence conclusively established that Rob and Andrea intended to forsake Asbury as their homestead. In support of this argument, Drake cites to evidence that Andrea acquired Queenswood during her marriage and claimed it as her homestead for tax purposes immediately after her divorce.
Generally, there is no better proof of an intent to abandon a homestead than acquiring and moving into a new homestead. See Hudgins v. Thompson , 109 Tex. 433, 211 S.W. 586, 588 (1919). However, that rule is soundest when all members of the family relocate to the new home together. When only part of the family relocates to the new home, evidence of abandonment can be "ambiguous." See Kendall Builders, Inc. v. Chesson , 149 S.W.3d 796, 808 (Tex. App.-Austin 2004, pet. denied).
Here, Andrea moved into Queenswood when she was separated from Rob and still a co-owner of Asbury. At any given moment, only one of these properties could be a homestead for as long as Andrea and Rob remained married. See Silvers v. Welch , 127 Tex. 58, 91 S.W.2d 686, 687 (1936) ("A family is not entitled to two homesteads at the same time."). Even during their period of separation, Andrea could not claim one homestead and Rob another. See Tremaine v. Showalter , 613 S.W.2d 35, 37 (Tex. Civ. App.-Corpus Christi 1981, no writ). Therefore, Andrea could only claim Queenswood as a homestead during her marriage if there was a complete and total abandonment of Asbury before the divorce. That abandonment could not be achieved without Rob's consent-i.e., his intent to abandon his own homestead interest in Asbury. See Tex. Prop. Code § 41.004 ("If a homestead claimant is married, a homestead cannot be abandoned without the consent of the claimant's spouse."). If Drake did not conclusively establish that intent, then Drake did not show that it was entitled to judgment as a matter of law.
In support of its argument that Rob had formed an intent to abandon Asbury, Drake cites to the same evidence that was attached to its summary-judgment response, beginning with the MSA. Rob and Andrea executed that MSA pursuant to Section 6.602 of the Texas Family Code, which provides that an agreement that meets certain requirements is binding and irrevocable. See Tex. Fam. Code § 6.602(b). Because the MSA in this case meets the statutory requirements, Drake argues that Rob could not repudiate his agreement to be divested of Asbury, which in turn means that there is conclusive evidence that Rob had formed an intent to never return to Asbury.
Drake's argument is partially correct. It is true that the MSA, once executed, became binding and enforceable against Rob. See Cayan v. Cayan , 38 S.W.3d 161, 166 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). However, the MSA does not necessarily prove that Rob had formed a present intent to forsake Asbury as his homestead.
The portion of the MSA that addresses the parties' property division is written in the future sense, rather than the present sense. It provides (with emphasis added): "Wife to be awarded 100% of the Asbury house." Reasonable and fair-minded people could interpret this forward-looking language as manifesting Rob's future intent to give Asbury to Andrea if and when the divorce is granted.
A future intent is possible in this case because the MSA was not sufficient by itself to effectuate the divorce. See Milner v. Milner , 361 S.W.3d 615, 618 (Tex. 2012)
*458 (providing that an MSA under Section 6.602 still "requires the rendition of a divorce decree that adopts the parties' agreement"). Only the family court could render a judgment of divorce, and until the moment of rendition, Andrea had an "absolute and unqualified" right to nonsuit her petition. See Ex parte Norton , 118 Tex. 581, 17 S.W.2d 1041, 1042-43 (1929) (orig. proceeding). We can think of no reason why this right would be prejudiced by an MSA, even one executed under Section 6.602. Cf. Crowder v. Union Nat'l Bank of Houston , 114 Tex. 34, 261 S.W. 375, 376 (1924) (the wife nonsuited her divorce even though she and her husband had already made an agreement for the division of the homestead). Indeed, the public policy in favor of marriage would caution against any suggestion that the right to nonsuit was somehow impaired because of the MSA. See Kelly v. Gross , 4 S.W.2d 296, 297 (Tex. Civ. App.-El Paso 1928, writ ref'd) ("Public policy strongly favors reconciliation of the parties, abandonment of divorce proceedings, and resumption of the marriage relation.").
If a nonsuit were possible and the parties were still free to reconcile, then Rob's execution of the MSA does not necessarily manifest a present intent to forsake Asbury. A reasonable person could infer that Rob signed the MSA with the intent of giving Asbury to Andrea at the time of divorce, rather than before it. See Crowder , 261 S.W. at 376 (husband testified that, despite the agreement he made with his wife, he believed that the property "would remain the homestead unless the divorce was granted"). And as we indicated earlier, if the presumptive homestead in Asbury continued on the day of divorce because Rob still had an intent to keep Asbury as his homestead, then Drake's judgment lien could not attach because Andrea acquired Rob's interest when the final decree of divorce ordered its conveyance to her. See Tex. Civ. Prac. & Rem. Code § 31.001.
Aside from the MSA, Drake cites to the agreed decree of divorce, which Rob and Andrea signed twelve days before the family court rendered the final decree of divorce. The agreed decree provides as follows: "IT IS ORDERED AND DECREED that the wife, Andrea Marie Thomas, is awarded [Asbury] as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property." Drake argues that this evidence conclusively establishes Rob's intent to abandon because Rob agreed to completely divest himself of Asbury, and both he and Andrea had agreed to end their marriage.
Once again, we think that reasonable people could differ in their conclusions about when Rob agreed to forsake his claim to Asbury. The agreed decree begins with decretal language ("IT IS ORDERED AND DECREED ..."). The voice of that language belongs to the family court, which has the authority to make orders and decrees, not Rob, who has no such authority.
Rob may have had a present intent to never return to Asbury when he signed the agreed decree, but based on the language of the decree itself, a reasonable person could also conclude that Rob intended to give Asbury to Andrea when the family court rendered a final divorce. Because we accept all reasonable inferences in favor of the nonmovant as true, we must hold that the agreed decree of divorce does not conclusively establish that Rob had formed an intent to abandon Asbury before December 31, 2008, when the final decree was rendered.
Drake makes two more arguments that must be addressed.
*459 First, Drake argues that abandonment occurred no later than January 1, 2009, because by that date, Rob had agreed to divest himself of Asbury in the divorce, which was granted the day before, but Rob still retained record title in Asbury and Rob did not execute his general warranty deed to Andrea until January 8, 2009. Drake is not entitled to judgment on this ground because it was not expressly presented in Drake's motion for summary judgment. See McConnell v. Southside Indep. Sch. Dist. , 858 S.W.2d 337, 339 (Tex. 1993) (plurality op.). Even if this ground had been presented in Drake's motion, it would lack merit because by January 1, 2009, Rob's interest in Asbury had already been conveyed according to the terms of the final decree of divorce, which meant that Rob had no interest in Asbury left to abandon. See Tex. Civ. Prac. & Rem. Code § 31.001 ; see also St. Louis, Ark. & Tex. Ry. v. McKinsey , 78 Tex. 298, 14 S.W. 645, 645 (1890) (holding that title relates back to the date of the judgment).
Second, Drake argues that we should consider two items of late-discovered evidence that Andrea allegedly concealed during discovery. Both items are deeds of trust that Rob and Andrea executed as part of their plan to build a luxury custom home on Queenswood. In each deed, Rob and Andrea represent that they will establish the new Queenswood home as their "principal residence." Drake construes that language as evidence of an intent to abandon Asbury, but the deeds themselves were executed in 2006 and 2007, when Rob and Andrea were still occupying Asbury. As we held in the previous appeal, abandonment could not be established at that time because the evidence conclusively showed the opposite of discontinued use. See Drake Interiors , 433 S.W.3d at 854. A reasonable person could also conclude that even if Rob had formed an intent to abandon Asbury when he executed those two deeds of trust, his intent may have changed in 2008, after he and Andrea began to experience marital difficulties.
We conclude that Drake did not conclusively establish that both Rob and Andrea had formed an intent during their marriage to forsake Asbury as their homestead, which was a necessary element of abandonment. Accordingly, the trial court did not err by denying Drake's cross-motion for summary judgment.[2]
CONCLUSION
The trial court's judgment is reversed and the case is remanded for additional proceedings consistent with this opinion.

Andrea raises an alternative argument in her brief that she acquired equitable title to Rob's homestead interest in Asbury when Rob executed the MSA. We need not address this argument because it was not expressly presented in Andrea's motion for summary judgment. See McConnell v. Southside Indep. Sch. Dist. , 858 S.W.2d 337, 339 (Tex. 1993) (plurality op.).

Because neither side established that it was entitled to summary judgment, we need not consider Drake's remaining challenges to the competency of Andrea's evidence or to her award of attorney's fees.