

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00142-CV

———————————————————

VALERIE L. MCNALLY NOW KNOWN AS VALERIE JENKINS AND KELLY
ALANA MCNALLY A/K/A KELLY ALANA WILKINS, Appellants

V.

JOSEPH P. MCNALLY, Appellee

On Appeal from County Court at Law No. 2
Parker County, Texas
Trial Court No. CIV-14-0690

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

When Joseph and Valerie McNally divorced in 1984, Joseph signed a promissory note payable to Valerie as trustee for their then-four-year-old daughter Kelly Alana McNally that was secured by a deed of trust against Joseph's homestead. Over 30 years later, Joseph sued to have the deed of trust declared void because it imposed an unconstitutional homestead lien. After the trial court granted summary judgment for Joseph and declared the lien void, Valerie added claims against Joseph arising from that declaration. The trial court granted summary judgment for Joseph on those claims as well.

Because we conclude that the trial court correctly declared the lien void but erred by granting summary judgment for Joseph on Valerie's additional claims, we will affirm in part and reverse and remand in part.

## I. Background

Joseph and Valerie were married in 1974. In 1978, they purchased two contiguous tracts of land totaling 38 acres. Tract 1 was 19.72 acres, and Tract 2 was 18.18 acres. Joseph and Valerie financed the purchase of Tract 1 through the First National Bank of Weatherford. Joseph, a military veteran, financed the purchase of Tract 2 through the Texas Veteran's Land Board. Kelly was born the following year.

In March 1982, The Federal Land Bank of Texas loaned Joseph and Valerie money to build a house on a two-acre parcel in Tract 2.[1] The loan was secured by the two-acre parcel and Tract 1.[2] After the home was completed, the family lived there until Valerie and Kelly moved out in early April 1984. Valerie sued for divorce later that month.

In May 1984, Joseph and Valerie agreed that he would get the land and the house; would assume all the debt; and would pay Valerie—as trustee for Kelly—half the net proceeds from the sale of Tract 1 and the two-acre parcel with the house (collectively, "the Property") if and when it was sold.[3] To effectuate their agreement, Valerie executed two documents: a quitclaim deed and a warranty deed. The quitclaim deed conveyed her one-half interest in Tract 2 (less the two-acre parcel with the house) to Joseph. The warranty deed conveyed her one-half interest in the Property to Joseph.[4]

---

[1]It appears that some of these loan proceeds were used to satisfy the debt remaining due to the First National Bank of Weatherford. But we cannot say for certain from the record. Regardless, the debt owed to the First National Bank of Weatherford appears to have been paid off at some point.

[2]The deed of trust securing the loan is not in the record. But the parties do not dispute that Tract 1 and the two-acre parcel with the house secured the loan.

[3]In reaching this agreement, Valerie was represented by counsel; Joseph was not. The agreement did not require Joseph to sell the Property.

[4]Within the warranty deed, Valerie retained "for herself and for her heirs and assigns the vendor's lien, as well as the superior title in and to the [Property] . . . until the note [payable to the Land Bank] and indebtedness herein assumed by [Joseph] has been fully paid . . . ."

For his part, Joseph executed three documents: a deed of trust to secure assumption, a promissory note, and a deed of trust. By the assumption deed, Joseph assumed the outstanding debt that was owed to the Land Bank. The promissory note was payable to Valerie, as trustee for Kelly, and its principal amount was

> equal to one-half of net proceeds to [Joseph] upon sale of [the Property], payable upon such sale; provided that if [Joseph] dies before any such sale occurs, then the principal amount shall equal one-half of the equity value in the property as determined by a court appointed appraiser, at [Joseph]'s death, which said sum shall be due and payable within thirty (30) days following such determination.

The note was secured by a deed of trust on the Property.[5] The deed of trust stated that it and the note were given "as partial settlement" of the divorce.

In July 1984, the divorce court signed an agreed divorce decree. In the decree, the divorce court found that Joseph and Valerie had "entered into an agreement for division of their estate, that said agreement has been executed, except as otherwise herein indicated,[6] and the estate divided pursuant thereto and that said agreement is just and right."

---

[5]According to Valerie's summary-judgment affidavit, the deed of trust was supposed to cover the entire 38 acres, but due to a drafting error, it covered only the Property.

[6]The decree awarded Valerie three paintings and awarded the parties' remaining property "to the party having possession of such property, subject to any indebtedness against such property, as may presently exist."

4

On the same day the divorce court signed the divorce decree, Valerie and Joseph signed an irrevocable trust agreement. The trust agreement named Valerie as the trustee, and the trust held the promissory note for Kelly's benefit.[7] Joseph did not appeal the final divorce decree.

A year and a half later, in December 1985, Valerie filed a "Memorandum of Trust Agreement" in the county deed records. The memorandum referenced the May 1984 deed of trust and the promissory note. The memorandum's stated purpose was "to advise any interested person that dealings should be had only with the named Trustee, VALERIE L. McNALLY . . . in regard to said property and the interest herein described."

After the divorce, Joseph continued to live on the Property. When Kelly turned 21 in late 2000, the trust terminated, and according to the trust's terms, the trust estate was to be distributed to her. But Kelly did not know that she had an interest in the Property until May 2014, when Joseph told her that he was planning to sue Valerie if Valerie did not execute documents releasing Kelly's interest in the property.

As promised, Joseph sued Valerie, later amending his petition to add Kelly as a defendant. Joseph alleged that since 1981, the Property has been his rural homestead.

---

[7]Under the heading "Trust Estate," the trust agreement stated that Joseph had "transferred and delivered to the Trust, pursuant to a property[-]settlement agreement incident to divorce, the property described in Schedule A, which is attached hereto" and that "[s]uch property . . . shall constitute the trust estate." Schedule A is not in the record, but the parties agree that the promissory note was the trust estate.

*See* Tex. Prop. Code Ann. § 41.002(b). He claimed that he had paid the debt owed to the Land Bank and thus demanded that the assumption deed be released. He further alleged that the May 1984 deed of trust, the note, the trust agreement, and the trust-agreement memorandum imposed unconstitutional liens on his homestead and were thus void. *See* Tex. Const. art. XVI, § 50; Tex. Prop. Code Ann. § 41.001. On this basis, he pleaded a quiet-title claim seeking a declaration that these liens were void.

Valerie and Kelly answered and asserted that res judicata barred Joseph's request for declaratory relief. They also countersued for a declaration that the May 1984 deed-of-trust lien was valid.[8]

The parties moved for summary judgment as a matter of law: Joseph on his quiet-title claim and Valerie and Kelly on their claim for declaratory relief and their res judicata defense. The parties also moved for summary judgment on no-evidence grounds: Joseph on Valerie and Kelly's claim for declaratory relief and their res judicata defense, and Valerie and Kelly on Joseph's quiet-title claim. After a hearing, the trial court granted Joseph's motions, denied Valerie and Kelly's motions, and declared void the May 1984 deed of trust, the assumption deed, and all other liens that "secure or which purport to secure payment" of the promissory note.

---

[8]Joseph, Valerie, and Kelly pleaded various claims and defenses, but for simplicity's sake, we will discuss only those claims and defenses upon which the trial court granted summary judgment and are relevant to Valerie and Kelly's appellate issues.

Because the trial court had declared the May 1984 deed of trust void, Valerie and Kelly amended their answer to add counterclaims on Valerie's behalf: common-law and statutory fraud; a request for a declaration that Valerie is a cotenant because the consideration for the property-settlement agreement failed and she thus owns an undivided one-half interest in the entire 38 acres; and a request for a partition of the 38 acres. Joseph amended his answer to assert an affirmative defense under the unlawful-acts rule. He then moved for summary judgment as a matter of law on that defense.

The trial court granted Joseph's motion and signed a final judgment incorporating its prior summary-judgment ruling. Valerie and Kelly have appealed and raise four issues:

1. The trial court erred by declaring the deeds of trust void that were given as part of a property-settlement agreement that was approved by the divorce court in the 1984 divorce case;

2. The trial court erred by granting Joseph's summary-judgment motion and declaring the liens void;

3. The trial court erred by denying Valerie and Kelly's summary-judgment motion on their request for a declaration that the liens are valid; and

4. The trial court erred by granting Joseph summary judgment on Valerie's counterclaims.

## II. Valerie and Kelly's First Three Issues

We begin by noting that in their "Issues Presented" section of their brief, Valerie and Kelly state (as recited above) that they are challenging the trial court's declaring as void the *liens* and *deeds* of trust, plural. The trial court declared void the May 1984 deed of trust, the assumption deed, and all other liens that "secure or which purport to secure payment" of the promissory note.[9] But Valerie and Kelly's argument and legal authorities make clear that they are challenging only the trial court's determination regarding the May 1984 deed of trust's validity. We thus address only the validity of the May 1984 deed of trust in resolving Valerie and Kelly's first three issues.

## III. Summary-Judgment Standards of Review

When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We should then render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848. Here, both sides moved for summary judgment on (1) Joseph's quiet-title claim; (2) Valerie and Kelly's

---

[9]We observe that the trial court's declaring as void all other liens that "secure or which purport to secure payment" of the promissory note does not appear to affect the validity of the other documents executed in conjunction with Joseph and Valerie's divorce because those documents did not create liens that secure or purport to secure payment of the promissory note.

request for a declaration that the May 1984 deed of trust was valid; and (3) Valerie and Kelly's res judicata defense.

## A. Traditional Motion

The parties filed the following traditional-summary-judgment motions: Joseph on his quiet-title claim; Valerie and Kelly on their request for declaratory relief; Valerie and Kelly on their res judicata defense; and Joseph on his unlawful-acts defense.

We review a traditional summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank*, 315 S.W.3d at 508–09; *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant must

present summary-judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

## B. No-evidence motion

The parties also moved for summary judgment on no-evidence grounds: Joseph on Valerie and Kelly's claim for declaratory relief and their res judicata defense, and Valerie and Kelly on Joseph's quiet-title claim. As with a traditional motion, we review a no-evidence summary judgment de novo. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d

10

at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## IV.  The Trial Court's Declaring the May 1984 Deed of Trust Void

Because Valerie and Kelly's first three issues challenge the trial court's declaration that the May 1984 deed of trust was void, we address them together. Joseph asserts that this deed-of-trust lien is void because it violates the Texas Constitution's general prohibition against homestead liens. *See* Tex. Const. art. XVI, § 50(a). On this basis, he sued to quiet title and sought a declaration that the May 1984 deed of trust was void. *See Schmidt v. Crawford*, 584 S.W.3d 640, 656 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Valerie and Kelly counter that res judicata bars Joseph's claims and, alternatively, that the lien is a valid homestead lien because it is either an owelty lien or a purchase-money lien, both of which the Texas Constitution currently permits.

## A. The Texas Constitution strictly limits the types of debt that can be secured by a homestead lien.

"Homestead properties are afforded special and unique protections under the Texas Constitution." *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 588 (Tex. App.—Austin 2013, pet. denied) (op. on reh'g). Texas homesteads are generally exempt from "forced sale, for the payments of all debts," except for those debts specifically enumerated in the Texas Constitution. Tex. Const. art. XVI, § 50(a); *see* Tex. Prop. Code Ann. § 41.001(b) (identifying encumbrances that may be properly fixed on homestead property). At the time of Joseph and Valerie's divorce in 1984, the Texas Constitution permitted liens against a homestead to secure only three things: purchase-money debt, property taxes due, or home-improvement debt. *See* Tex. H.J. Res. 7, § 1, 63rd Leg., R.S., 1973 Tex. Gen. Laws 2478, 2478 (adopted at the general election on Nov. 6, 1973); *see also* Tex. Const. art. XVI, § 50 (amended 2017); *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 n.9 (Tex. 2013). The Texas Constitution was amended in 1995 to allow owelty liens.[10] Tex. S.J. Res. 46, § 1, 74th Leg., R.S., 1995 Tex. Gen. Laws 6431, 6431 (adopted at the general election on Nov. 7, 1995); *see also* Tex. Const. art. XVI, § 50 (amended 2017); *Norwood*, 418 S.W.3d at 571 n.10. But at no time has the constitution contained "an exception allowing a lien to be imposed [on a homestead] simply to achieve a 'just and right' division of property upon divorce." *Barras v. Barras*,

---

[10]The Texas Constitution also now allows other types of homestead liens. *See* Tex. Const. art. XVI, § 50(a)(4), (6)–(8); *Norwood*, 418 S.W.3d at 571 n.10.

396 S.W.3d 154, 164 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992)).

**B. Res judicata did not bar Joseph's claims regarding the May 1984 deed of trust.**

Valerie and Kelly claimed in the trial court and maintain on appeal that res judicata bars Joseph's request for declaratory relief because the divorce decree approved Joseph and Valerie's property-settlement agreement and Joseph did not appeal the decree. They argue that Joseph's challenge to the May 1984 deed of trust is thus an impermissible collateral attack on a final judgment that is barred by res judicata.

Res judicata is an affirmative defense that applies to final divorce decrees to the same extent it applies to any other final judgment. *See* Tex. R. Civ. P. 94; *Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990). "If an appeal is not timely perfected from the divorce decree, res judicata bars a subsequent collateral attack" and "applies even if the divorce decree improperly divided the property." *Baxter*, 794 S.W.2d at 762.

Here, Joseph's challenge to the May 1984 deed of trust is not an attempt to alter the original division of property. Rather, Joseph is challenging the constitutionality of the lien securing the note; Joseph's payment obligation under that note (assuming that it was a part of the parties' property division even though payable to Valerie as Kelly's trustee, not to Valerie individually) is unaffected by the lien's validity. Moreover, a homestead lien is invalid unless the debt it secures is one recognized in Section 50(a). *See* Tex. Const. art. XVI, § 50(c) ("No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section . . . .");

13

*Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 545, 548 (Tex. 2016). And "[w]hat the Constitution forbids cannot be evaded even by agreement of the parties, and what is 'never valid is always void.'" *Wood*, 505 S.W.3d at 545 (citations omitted); *see Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991) ("Any attempt to mortgage homestead property, except as approved by the Texas Constitution, is void. A mortgage or lien that is void because it was illegally levied against homestead property can never have any effect. . . ." (citations omitted)); *In re Marriage of Christodolou*, 383 S.W.3d 718, 721 (Tex. App.—Amarillo 2012, no pet.) ("[L]iens or like encumbrances upon a homestead that do not fall within the exceptions provided in art. 16, § 50 are void." (citing *Laster*, 826 S.W.2d at 129–30)). Thus, res judicata does not bar Joseph's challenge to the May 1984 deed of trust, and the trial court did not err by denying Valerie and Kelly summary judgment on their affirmative defense.

## C. Joseph proved that the Property was his homestead.

Joseph moved for summary judgment as a matter of law on his quiet-title claim and argued that because the Property was his homestead, the May 1984 deed-of-trust lien is void because it did not secure a purchase-money debt, property taxes due, or home-improvement debt. He also moved for summary judgment on no-evidence grounds, asserting that Valerie and Kelly's request for declaratory relief failed because they had no evidence that the lien secured a purchase-money, tax, or home-improvement debt.

"The party claiming a homestead exemption has the burden to prove that the property constituted a homestead at the time the deed of trust was executed." *Chase Manhattan Mortg. Corp. v. Cook*, 141 S.W.3d 709, 713 (Tex. App.—Eastland 2004, no pet.). Thus, Joseph—as the party seeking the exemption—was required to prove (1) overt acts of usage and (2) his intention to claim the Property as his homestead at the time he executed the deed of trust. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 159 (Tex. 2015); *Drake Interiors, Inc. v. Thomas*, 544 S.W.3d 449, 454 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (stating that this burden is satisfied by proof that homestead claimants occupied property and intended to keep it as their homestead). Whether a property is a homestead is a fact question. *Zorrilla*, 469 S.W.3d at 160.

Here, Valerie and Kelly did not dispute the homestead character of the Property in the trial court, and they do not challenge it on appeal. The summary-judgment evidence established that the Property was Joseph's homestead when he, Valerie, and Kelly started living there with the intent to claim it as their homestead sometime before the divorce. The Property's homestead character continued because "[o]nce a property is impressed with homestead rights, the law presumes that the property continues as a homestead." *Drake Interiors*, 544 S.W.3d at 454 (citing *Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex. 1971)); *see Marincasiu v. Drilling*, 441 S.W.3d 551, 559 (Tex. App.—El Paso 2014, pet. denied) (holding that once property is shown to be a homestead, the constitutional homestead privilege against enumerated liens is presumed to exist unless lienholder proves termination of homestead status through abandonment, alienation, or death).

Joseph thus proved that the property was his homestead at the time he executed the May 1984 deed of trust.

Because Joseph proved the Property's homestead status, we must determine whether the lien fell within one of the Texas Constitution's homestead-lien exceptions. Both parties moved for summary judgment on this issue, with Valerie and Kelly arguing that the lien was either an owelty lien or a purchase-money lien, and Joseph contending that it was neither. The question of a lien's validity is a legal question that we review de novo. *See Barras*, 396 S.W.3d at 165; *Christodolou*, 383 S.W.3d at 721; *Florey v. Estate of McConnell*, 212 S.W.3d 439, 445 (Tex. App.—Austin 2006, pet. denied).

### D. The May 1984 deed-of-trust lien is not an owelty lien.

Before determining whether the lien against Joseph's homestead is valid, we must determine which version of the constitution governs this case, another legal question. *See Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 154 (Tex. App.—Fort Worth 2007, pet. denied). On appeal, Valerie and Kelly argue that the May 1984 deed of trust created a valid owelty lien under Article XVI, Section 50(a)(3) of the Texas Constitution. *See* Tex. Const. art. XVI, § 50(a)(3). But when Joseph and Valerie divorced in 1984, Article XVI, Section 50(a) of the Texas Constitution protected homesteads from forced sales except for only the payment of purchase-money debt, property taxes due, or home-improvement debt. *See* Tex. H.J. Res. 7, § 1, 63rd Leg., R.S., 1973 Tex. Gen. Laws 2478, 2478 (adopted at the general election on Nov. 6, 1973). Not until its 1995 amendment did Article XVI, Section 50 allow liens on homestead properties for

an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding.

*See* Tex. S.J. Res. 46, § 1, 74th Leg., R.S., 1995 Tex. Gen. Laws 6431, 6431 (adopted at the general election on Nov. 7, 1995).

Constitutional amendments generally operate prospectively. *See* Tex. Const. art. XVII, § 1(c) (stating that a constitutional amendment "shall become a part of [the] Constitution" when it appears that "a majority of the votes cast have been cast in favor of [the] amendment"). The Texas Supreme Court and this court have refused to retroactively apply amendments to Article XVI, Section 50(a). *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 660 (Tex. 1996) (refusing to apply 1995 constitutional amendment when lender's subrogation rights were fixed before the amendment's adoption); *Fix*, 242 S.W.3d at 154–57 (concluding applying 2003 amendment retroactively was not warranted and applying the version of the constitution in force at the time the parties entered into the loan agreement). We likewise refuse to retroactively apply the 1995 amendment when determining whether the May 1984 deed-of-trust lien is void.

Even so, we must still determine whether the May 1984 deed-of-trust lien is an owelty lien because under Texas law, owelty liens are a form of purchase-money lien, *see Sayers v. Pyland*, 161 S.W.2d 769, 772 (Tex. 1942), which the Texas Constitution allowed against homesteads in 1984. An owelty, as the Texas Supreme Court has

17

explained, is the difference in value that results when a court divides real property into shares of unequal value in partition proceedings. *Id.* The court may then order an owelty payment to equalize the shares' value and impose a lien on the greater share in favor of the recipient of the lesser share to secure the owelty payment. *See id.* "Application of the doctrine of owelty is limited to those cases in which partition in kind is adjudged." *Rodriguez v. Rivas*, 573 S.W.3d 447, 453 (Tex. App.—Amarillo 2019, no pet.); *see Travelers Ins. Co. v. Nauert*, 200 S.W.2d 661, 665 (Tex. App.—El Paso 1941, no writ) ("In case there be a partition in kind, owelty may be adjudged to achieve a fair and equitable partition.").

Here, however, the divorce court did not partition Joseph and Valerie's property, order an owelty payment, or impose a lien. *Cf. Crockett v. McSwain*, No. 11-00-00374-CV, 2001 WL 34373604, at *4 (Tex. App.—Eastland Nov. 1, 2001, no pet.) (not designated for publication) ("There is nothing in the divorce decree to indicate that the lien was an owelty lien. To the contrary, the divorce decree states that the lien was to secure the $40,000 to be paid for [Wife's] interest in the [couple's] business and her interest in the homestead."). Thus, the May 1984 deed-of-trust lien was not an owelty lien.

### E. The May 1984 deed-of-trust lien was not a purchase-money lien.

Valerie and Kelly next argue the May 1984 deed-of-trust lien on Joseph's homestead is constitutionally valid because it is a purchase-money lien.

18

"[P]urchase[-]money liens denote a transaction wherein a person who loans money to another to acquire property obtains a lien on the property purchased." *Christodolou*, 383 S.W.3d at 721; *see First Nat'l Bank v. Lubbock Feeders, L.P.*, 183 S.W.3d 875, 882 (Tex. App.—Eastland 2006, pet. denied) (stating that when a creditor makes a loan enabling a debtor to acquire an interest in goods, the creditor may obtain a purchase-money security interest in the goods); *CFB–5, Inc. v. Cunningham*, 371 B.R. 175, 180 (N.D. Tex. 2007) (describing a purchase-money security interest as one where the party holding the security interest gave value to the debtor that enabled the debtor to acquire the collateral). Purchase-money liens include vendor's liens. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984) (op. on reh'g); *Magallanez v. Magallanez*, 911 S.W.2d 91, 94 (Tex. App.—El Paso 1995, no writ).

Here, the promissory note—payable to Valerie as trustee for Kelly—was not a part of "a transaction wherein a person who loans money to another to acquire property obtains a lien on the property purchased." *Christodolou*, 383 S.W.3d at 721. That is, Valerie acting as Kelly's trustee did not loan money to Joseph so that he could purchase Valerie's one-half interest in the Property.

In a divorce proceeding, however, a trial court can impose an equitable vendor's lien on a spouse's homestead to secure payment of an amount awarded to the other spouse, "but the amount secured is limited to the amount of the homestead interest awarded to the other spouse." *Cole v. Cole*, 880 S.W.2d 477, 484 (Tex. App.—Fort Worth 1994, no writ) (citing cases); *see Magallanez*, 911 S.W.2d at 94–95 (affirming validity of

19

deed of trust executed against ex-wife's homestead as an equitable vendor's lien for "the interest in the house that [ex-husband] had 'sold'"). An equitable lien can then be formalized by a deed of trust. *See Magallanez*, 911 S.W.2d at 94.

A vendor's lien can also be implied. *McGoodwin*, 671 S.W.2d at 882 ("[W]hen no express lien is reserved in a deed and the purchase money is not paid, a lien nevertheless arises by implication in favor of the vendor to secure payment of the purchase money."). In the divorce context, when a decree approves a settlement agreement by which one spouse agrees to pay a sum of money in consideration for the other spouse's interest in the homestead but no express lien is reserved in a deed and the purchase money is unpaid, an implied vendor's lien against the homestead arises in favor of the conveying spouse to secure payment of that purchase money. *See id.*; *see also Crockett*, 2001 WL 34373604, at *2 ("Even when there is no document creating an express lien, if the purchase money is not paid to a spouse for conveying his or her homestead interest to the other upon divorce, a vendor's lien arises by implication in favor of the conveying spouse to secure payment of the purchase money.").

Here, the May 1984 deed-of-trust lien secured payment of the promissory note:

> This conveyance . . . is made in TRUST to secure payment of one promissory note of even date herewith in the principal sum of an amount equal to one-half of the net proceeds to grantor upon sale of property herein described or as otherwise determined by the provisions of said note . . . payable to the order of Valerie L. McNally, as trustee for Kelly Alana McNally, a child . . . upon sale of property herein described.

20

The deed of trust also stated that it "and the Note hereby secured are given for the following purpose . . . : as partial settlement of matters in controversy in [the pending divorce proceeding]."

Although the May 1984 deed of trust stated that the note and deed of trust were in partial settlement of the divorce, that alone does not make the lien a valid homestead lien. *See Barras*, 396 S.W.3d at 165 (stating that the constitution does not permit homestead liens to achieve a just and right division of property upon divorce). As noted, in a divorce proceeding, a trial court can impose an equitable lien on a spouse's homestead to secure payment of an amount awarded to the other spouse, but the amount secured is limited to the specific amount paid for the other spouse's interest in the homestead. *Cole*, 880 S.W.2d at 484. While *Cole* was a direct appeal from a divorce decree, courts have applied this concept to challenges to a lien's validity not brought on direct appeal from a decree. *See, e.g., Crockett*, 2001 WL 34373604, at *3 (concluding that no equitable vendor's lien was created in ex-husband's homestead because "the divorce court could only impose a vendor's lien for a specific amount that was to be paid for [wife's] interest in the homestead" but did not do so in the agreed divorce decree); *Trison Inv. Co. v. Woodward*, 838 S.W.2d 790, 792–93 (Tex. App.—Dallas 1992, writ denied) (concluding as a matter of law that an implied vendor's lien did not arise against non-homestead real property when the divorce decree did not apportion the consideration between the real property conveyed and the personal or other property conveyed).

Here, the divorce court stated in the decree that the parties had "entered into an agreement for division of their estate," "that said agreement has been executed, except as otherwise herein indicated, and the estate divided pursuant thereto," and that "said agreement is just and right." Presumably, that "agreement" was reflected in the series of documents executed a month before: the quitclaim deed conveying Valerie's interest in Tract 2 to Joseph; the warranty deed conveying Valerie's interest in the Property to Joseph; the assumption deed; the promissory note; and the May 1984 deed of trust. But that was not the end of the divorce court's property division: the decree also awarded Valerie three paintings and awarded the parties' remaining property "to the party having possession of such property, subject to any indebtedness against such property, as may presently exist."

Neither the decree nor the parties' agreement reflected that the promissory note—which was payable to Valerie as Kelly's trustee but not to Valerie individually—was part of the consideration Joseph gave Valerie for her one-half interest in the Property. Thus, the divorce court did not create an equitable vendor's lien in the Property to secure payment of the note.

Valerie and Kelly argue that under *McGoodwin*, the May 1984 deed-of-trust lien is a valid purchase-money lien because such a lien can be implied. In *McGoodwin*, the divorce decree approved the parties' property-settlement agreement that awarded the husband 22 acres of land as his separate property and by which he agreed to pay the wife $22,500 for her one-half interest in the land. 671 S.W.2d at 881. When the ex-

22

husband failed to pay, the ex-wife sued to foreclose on the property, claiming that the settlement agreement created an implied vendor's lien in her favor. *See id.* The trial court agreed and ordered the lien foreclosed and the property sold. *Id.*

The supreme court agreed and explained that in the property-settlement agreement, the ex-wife had contracted to sell her interest in the property to the ex-husband for $22,500 and that agreement was incorporated into the property-division order in the divorce decree. *Id.* at 882. The court held that because the purchase money was not paid at the time of divorce decree, an implied vendor's lien arose in the ex-wife's favor against the undivided one-half interest that she had "sold" to her ex-husband in the divorce. *Id.* The purchase-money lien was superior to the ex-husband's homestead-protection claim, and the ex-wife could thus foreclose on her vendor's lien. *Id.* at 882–83.

*McGoodwin* is inapposite. Here, the divorce court approved the parties' "agreement for division of their estate." But unlike the settlement agreement in *McGoodwin*—which expressly stated that the husband agreed to pay $22,500 as consideration for the wife's one-half interest in the property—the parties' "agreement" does not reflect the specific consideration Joseph agreed to pay Valerie for her one-half interest in the Property.

Accordingly, the May 1984 deed-of-trust lien is not a purchase-money lien.

**F. The trial court correctly declared the May 1984 deed of trust void.**

Because the May 1984 deed-of-trust lien is neither an owelty lien nor a purchase-money lien, the trial court did not err by granting summary judgment for Joseph and declaring the May 1984 deed of trust void. We thus overrule Valerie and Kelly's first three issues.

## V. The Trial Court's Granting Joseph Summary Judgment on Valerie's Claims Arising from the Trial Court's First Summary-Judgment Ruling

In their fourth and final issue, Valerie and Kelly argue that the trial court erred by granting Joseph summary judgment on Valerie's claims arising from the trial court's granting him summary judgment on his claims for quiet title and declaratory relief. After the trial court declared void the May 1984 deed of trust, assumption deed, and all other liens that "secure or purport to secure payment" of the promissory note, Valerie added claims against Joseph for common-law and statutory fraud; a request for a declaration that she is a cotenant because the consideration for the property-settlement agreement failed and she thus owns an undivided one-half interest in the entire 38 acres; and a request for a partition of the 38 acres. Joseph then successfully moved for summary judgment as a matter of law on his unlawful-acts-rule defense.

Under the unlawful-acts rule, a plaintiff cannot recover for her claimed injury if she was engaged in an illegal act at the time of her claimed injury. *Sharpe v. Turley*, 191 S.W.3d 362, 366 (Tex. App.—Dallas 2006, pet. denied). Texas courts have applied this rule, along with public-policy principles, to prevent a plaintiff from recovering

claimed damages that arise out of her own illegal conduct. *Id.* "Courts have interpreted this defense to mean that if the illegal act is inextricably intertwined with the claim and the alleged damages would not have occurred but for the illegal act, the plaintiff is not entitled to recover as a matter of law." *Id.*

"A contract to do a thing which cannot be performed without violation of the law violates public policy and is void." *Denson v. Dall. Cty. Credit Union*, 262 S.W.3d 846, 852 (Tex. App.—Dallas 2008, no pet.). Here, the trial court determined—and we agree—that the May 1984 deed-of-trust lien was not a constitutionally valid lien against Joseph's homestead and was thus void. Joseph asserts that Valerie's illegal act was her attorney's preparing a deed of trust creating a constitutionally void lien and argues that because her claims arise from this act, the unlawful-acts rule applies and bars Valerie's claims. Valerie counters that it was not unlawful for her (1) to enter into an agreement incident to divorce; (2) to attempt to have a lien securing an uncompensated conveyance of her interest in the Property; and (3) to attempt to provide financial security for Kelly.

Courts have applied the unlawful-acts doctrine in cases where the plaintiff has been convicted of a crime. *See, e.g., Ward v. Emmett*, 37 S.W.3d 500, 503 (Tex. App.—San Antonio 2001, no pet.) (holding that unlawful-acts rule barred plaintiff, who was convicted of murdering her mother, from recovering on various claims because her damages arose from the murder); *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 470 (Tex. App.—San Antonio 1994, writ denied) (holding public policy barred

25

plaintiffs' legal-malpractice claim because their damages were caused by their illegal conduct, which resulted in their convictions for bank fraud). Others have applied the doctrine without mentioning a conviction, but the unlawful act barring the plaintiff's claim was in fact illegal conduct. *See Denson*, 262 S.W.3d at 855 (holding that unlawful-acts rule barred plaintiff's tort claims because they were "inextricably intertwined with their illegal contract to sell automobiles in Dallas County without a [statutorily required] license"); *Sharpe*, 191 S.W.3d at 369 ("Because [Sharpe's] conduct in removing the Diocese's items from Diocesan property without its permission is the foundation of his allegation that he has a superior right to the items and that alleged right is the basis of his fraud claim against Turley, the trial court properly granted summary judgment in favor of Turley [under the unlawful-acts rule]."); *Stevens v. Hallmark*, 109 S.W.2d 1106, 1106 (Tex. App.—Austin 1937, no writ) (concluding that plaintiff's illegal possession of 129 cases of beer for resale in dry county barred his suit to recover the beer from sheriff who had legally seized it).

Based on these cases, Valerie's divorce attorney's preparing the May 1984 void deed of trust, while perhaps misguided, was not an "illegal act" for purposes of the unlawful-acts rule.[11] The rule thus does not apply here. We therefore conclude that

---

[11]We do not decide whether, as a general matter, an attorney's illegal acts can be imputed to his client under the unlawful-acts rule. *See generally Nathan A. Watson Co. v. Emp'rs Mut. Cas. Co.*, 218 S.W.3d 797, 802 (Tex. App.—Fort Worth 2007, no pet.) ("The

Joseph failed to establish that he was entitled to summary judgment as a matter of law on his unlawful-acts-rule defense. We sustain Valerie and Kelly's fourth issue.

## VI. Conclusion

Having sustained Valerie and Kelly's fourth issue, we reverse the trial court's judgment on Valerie's claims for common-law fraud, statutory fraud, partition, and declaratory relief regarding her cotenancy and remand those claims to the trial court for additional proceedings consistent with this opinion. Having overruled Valerie and Kelly's first three issues, we affirm the remainder of the trial court's judgment

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: September 3, 2020

---

attorney-client relationship is an agency relationship. The attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts.").