**Reversed and Remanded and Opinion filed January 27, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00419-CV

---

## SIGNAD, LTD., Appellant

### V.

## BJZ INVESTMENTS, LLC, BLAKE ZIMMERMAN, AND JILL BELL, Appellees

---

**On Appeal from the 21st District Court
Washington County, Texas
Trial Court Cause No. 37367**

---

### OPINION

Several issues are raised in this appeal, but we consider just the following two: first, whether we have appellate jurisdiction; and second, whether the trial court properly granted a motion for summary judgment. We conclude that we have appellate jurisdiction, and that the summary judgment was improper. We therefore reverse the trial court's judgment and remand the case for additional proceedings consistent with this opinion.

# BACKGROUND

This case arises out of the breach of a lease agreement.

In late 2012, Mike and Emily Kopycinski entered into an agreement to lease a portion of their real property to SignAd, Ltd., which is in the business of outdoor advertising. The agreement contemplated the erection of a billboard on the Kopycinskis' property, which is adjacent to a major highway. The agreement required a one-time rental payment of thirty thousand dollars, which SignAd paid in exchange for a lease term of thirty years. The agreement also granted SignAd a right of first refusal, which enabled SignAd to match any acceptable offer for the purchase of the Kopycinskis' property, should the Kopycinskis ever decide to sell their property during the term of the lease.

In early 2013, SignAd erected a large, double-facing billboard on the Kopycinskis' property. SignAd regularly maintained the billboard and changed the advertising copy on either a monthly, semi-annual, or annual basis. But for several years, SignAd did not record a copy or memorandum of its lease agreement in the county real property records, nor did SignAd maintain any sort of regular contact with the Kopycinskis, because the lease agreement only required the one-time rental payment.

In 2017, the Kopycinskis received an offer for the purchase of their property from BJZ Investments, LLC. The Kopycinskis determined that the offer was acceptable, but they did not notify SignAd of the offer before accepting it, which was a violation of the lease agreement. Nor did the Kopycinskis notify BJZ of SignAd's right of first refusal. The Kopycinskis conveyed the property to BJZ by warranty deed, which stated that the conveyance was made subject to "such presently valid and subsisting easements, if any, . . . which are not of record."

In 2019, nearly two years after the conveyance, BJZ reached out to SignAd by phone and email and requested a copy of its lease agreement with the Kopycinskis. Through these contacts, SignAd first learned of the conveyance from the Kopycinskis to BJZ.

Soon thereafter, SignAd recorded a memorandum of its lease agreement and right of first refusal in the county real property records. SignAd also sent a letter to BJZ, asserting its right of first refusal and demanding that BJZ convey the property to SignAd for the same consideration that BJZ had paid to the Kopycinskis. When BJZ refused the demand, SignAd filed this suit.

In its live pleading, SignAd asserted causes of action against BJZ and two affiliated individuals, Blake Zimmerman and Jill Bell (collectively, the "BJZ Parties"), as well as against the Kopycinskis. SignAd sought a declaratory judgment that it was entitled to purchase the property from the BJZ Parties based on its right of first refusal, which was still valid and enforceable. SignAd also sought damages for a breach of contract.

The Kopycinskis filed a pro se answer, asserting in a single sentence that they were not liable for the allegations against them. They did not seek any relief from any party.

The BJZ Parties also filed an answer, but they were represented by counsel, and they generally denied the allegations against them and sought to recover from SignAd their attorney's fees and related costs. The BJZ Parties did not assert any particular cause of action against SignAd, but the BJZ Parties claimed that they were entitled to their fees and costs under Chapter 38 of the Texas Civil Practice and Remedies Code.

SignAd moved for a partial summary judgment on its breach of contract claim against the Kopycinskis, which the trial court granted as to liability only. The trial court's order made no mention or award of damages resulting from the Kopycinskis' breach of contract.

Roughly one month after this order, the BJZ Parties moved for summary judgment against SignAd. The BJZ Parties argued that they were bona fide purchasers, which was an affirmative defense that, if proven, would defeat SignAd's claims. As additional affirmative defenses, the BJZ Parties argued that SignAd's claims were defeated by theories of equitable estoppel, failure of consideration, laches, and waiver. SignAd filed a response with evidence attached and argued that the BJZ Parties' affirmative defenses were not applicable, or that fact issues precluded a summary judgment.

Without stating its reasoning, the trial court granted the BJZ Parties' motion and signed an "Order Granting Summary Judgment." This order was dated February 6, 2020, and it contained the following language:

> It is therefore, ORDERED, ADJUDGED, and DECREED that Plaintiff SignAd take nothing by its claims; that Defendants BJZ [I]nvestments LLC, Blake Zimmerman, and Jill Bell recover their costs and reasonable and necessary attorneys' fees in the amount of $20,582.64 from Plaintiff; and for such other and further relief to which Defendants may be justly entitled to, at law or in equity.

More than two months after the trial court signed this order, the BJZ Parties moved for a severance, asserting in their motion that SignAd still had a pending claim against the Kopycinskis, which made the order interlocutory.

The trial court granted the severance and signed an "Order Granting Entry of Final Judgment" in favor of the BJZ Parties. Less than two weeks after signing that order, the trial court voided it and signed another "Order Granting Entry of Final

4

Judgment" in favor of the BJZ Parties. That subsequent order was dated May 4, 2020. Twenty-eight days after that, on June 1, 2020, SignAd filed its notice of appeal.

The appeal was assigned to our court, and SignAd raised several issues in its appellant's brief. These issues included challenges to the trial court's summary judgment, its award of attorney's fees, and its rulings on miscellaneous motions and objections. There was no mention of appellate jurisdiction in this opening brief.

In their appellees' brief, the BJZ Parties argued for the first time that we lacked jurisdiction to address any of SignAd's issues. In an about-face from their position in the trial court, the BJZ Parties argued that the trial court's February 6th order had been final—not interlocutory—and that SignAd had failed to timely perfect its appeal.

SignAd filed a reply brief to address this jurisdictional argument, and the BJZ Parties filed a surreply in response. Before we may consider the merits of SignAd's appeal, we must first address this threshold question of appellate jurisdiction.

## APPELLATE JURISDICTION

A timely filed notice of appeal is essential to invoke this court's appellate jurisdiction. *See* Tex. R. App. P. 25.1(b). As a general rule, a notice of appeal is timely if it is filed within thirty days of the trial court's final judgment. *See* Tex. R. App. P. 26.1. There are several exceptions to this rule, *see* Tex. R. App. P. 26.1(a)–(d), and we even have the discretion to extend the filing deadline in certain situations, *see* Tex. R. App. P. 26.3, but none of those circumstances applies here. Thus, SignAd's notice of appeal was due within thirty days of the final judgment.

The parties dispute when the trial court's final judgment was actually rendered. If the final judgment was rendered by the trial court's May 4th order, as

SignAd argues in its reply brief, then the notice of appeal was due by June 3, 2020, which would mean that we have appellate jurisdiction because SignAd filed its notice of appeal two days earlier. If, on the other hand, the final judgment was rendered by the trial court's February 6th order, as the BJZ Parties now argue, then the notice of appeal was due on March 9, 2020, which is technically thirty-two days after the order because the thirtieth calendar day fell on a weekend. *See* Tex. R. App. P. 4.1 (providing that if a deadline falls on a weekend or legal holiday, then the deadline is extended to the next day that is not a weekend or legal holiday). This would also mean that we lack appellate jurisdiction because SignAd filed its notice of appeal eighty-four days too late.

We consider questions of finality under a de novo standard of review. *See Matter of Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) (per curiam). And in making our determination of finality, we are guided by *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001), which held that a judgment issued without a conventional trial is final for purposes of appeal if at least one of the following tests has been satisfied: (1) "it states with unmistakable clarity that it is a final judgment as to all claims and all parties," or (2) "it actually disposes of all claims and parties then before the court, regardless of its language." *Id.* at 192–93.

*Lehmann* provided an exemplar for the first test. If the judgment contains a phrase such as, "This judgment finally disposes of all parties and all claims and is appealable," then there can be no doubt that the judgment is final. *Id.* at 206. The trial court's May 4th order contains such a finality phrase, which means that it was final for purposes of appeal, so long as it was signed at a time when the trial court still retained its plenary power.

The BJZ Parties argue that the trial court had already lost its plenary power by the time of its May 4th order. They contend that the trial court's plenary power

6

lapsed on March 9th because the February 6th order was final and because no party filed a motion that would have extended the trial court's plenary power.

The February 6th order does not contain a *Lehmann*-type finality phrase. Without such language, the order can only be final if, under *Lehmann*'s second test, it actually disposed of all parties and claims then before the court. To determine whether the order actually disposed of all parties and claims, we consider the language of the order and the record in the case. *Id.* at 195 ("Because the law does not require that a final judgment be in any particular form, whether a judicial decree is a final judgment must be determined from its language and the record in the case.").

The February 6th order decrees that SignAd shall "take nothing by its claims." The BJZ Parties believe that this language disposes of all of SignAd's claims—i.e., the claims against the BJZ Parties *and* the Kopycinskis. We disagree. The order does not clearly and unequivocally identify which claims are being adjudicated.

A review of the record reveals that the order only adjudicated SignAd's claims against the BJZ Parties. The order indicates that the trial court rendered the take-nothing judgment as a consequence of the BJZ Parties' motion for summary judgment. That motion was not joined by the Kopycinskis, and it provided no basis for relief in favor of the Kopycinskis. Instead, the motion only provided a basis for relief in favor of the BJZ Parties.

Other aspects of the record reveal that the order was not intended to dispose of SignAd's claims against the Kopycinskis. For example, the order makes no mention of the Kopycinskis, other than in the caption because they are co-defendants in the suit. Also, the order is not styled as a "Final Judgment." The word "final" and all of its grammatical variations do not even appear in the order. And lastly, the BJZ

7

Parties themselves represented to the trial court that SignAd still had a pending claim against the Kopycinskis even after the order had been signed.

We conclude that the February 6th order was interlocutory because it did not dispose of all parties and all claims—in particular SignAd's claims against the Kopycinskis. Instead, the May 4th order was final because it followed a severance and it contained a *Lehmann*-type finality phrase. Because SignAd timely filed its notice of appeal within thirty days of the May 4th order, we further conclude that we have appellate jurisdiction. We therefore proceed to the merits of SignAd's appeal.

## SUMMARY JUDGMENT

The BJZ Parties moved for summary judgment on traditional grounds and argued that SignAd's claims were precluded by five affirmative defenses. As the movants below, the BJZ Parties had the initial burden of showing that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law on at least one of their defenses. *See Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam). If the BJZ Parties conclusively established a defense, then the burden shifted to SignAd to show that summary judgment was improper, either by disproving the defense or by raising a fact issue. *Id.* To the extent that SignAd produced any evidence in response to the BJZ Parties' motion, we consider that evidence by indulging every reasonable inference and resolving any doubts in SignAd's favor, because SignAd was the nonmovant. *Id.* We also consider whether the parties satisfied their respective burdens de novo. *Id.*

## I.  Bona Fide Purchasers

The BJZ Parties' main defense—which they incidentally asserted last in their motion for summary judgment, yet address exclusively in their brief on appeal—was that they were bona fide purchasers. To prove that affirmative defense, the BJZ

8

Parties were required to establish the following three elements: (1) that they acquired the Kopycinskis' property in good faith, (2) that they paid valuable consideration for the property, and (3) that they had no notice of any third-party claim or interest in the property. *See Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam); *see also* Tex. Property Code § 13.001(a)–(b) (providing that the conveyance of an interest in real property is void as to subsequent purchasers for value unless the conveyance has been recorded, except that an unrecorded instrument is still binding on subsequent purchasers if the purchasers had notice of the instrument).

The BJZ Parties produced affidavit testimony that they paid five hundred thousand dollars for the Kopycinskis' property. They also attested that, as a condition of the purchase, the Kopycinskis were required to disclose any and all leases affecting the property, and no such disclosures were made. The BJZ Parties further attested that they obtained a title policy during the purchase process, and the title search never revealed that SignAd held any encumbrance or interest in the property. Finally, the BJZ Parties attested that they were never notified or provided with a copy of anything pertaining to SignAd until two years after the purchase.

For the sake of argument, we will assume without deciding that this evidence was sufficient to satisfy the BJZ Parties' initial burden of proving their affirmative defense. The question we must next consider is whether SignAd satisfied its burden as the nonmovant by disproving the defense or by raising a genuine issue of material fact.

In its response to the motion for summary judgment, SignAd focused on the notice element of the affirmative defense.

Notice can be actual or constructive. *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (per curiam). Actual notice depends on personal knowledge, whereas constructive notice is notice that the law imputes to a party without such

9

knowledge in certain situations. *Id.* When the situation is the purchase of real property, the purchaser may be charged with constructive notice of the claims of an occupant or possessor if those claims could have been reasonably discovered upon a proper inquiry. *Id.* The duty to inquire into such claims arises only when the occupation or possession is visible, open, exclusive, and unequivocal. *Id.*

SignAd argued that there was at least a fact question as to whether the BJZ Parties had constructive notice of its rights under the lease because SignAd occupied a portion of the Kopycinskis' property through its erection of a billboard, and that billboard was visible, open, exclusive, and unequivocal. We agree.

SignAd produced evidence that its billboard is nearly sixty feet tall, and that it hosts two back-to-back display faces measuring fourteen feet by forty-eight feet. Pictures further reveal that the billboard is lighted and that it towers above the natural landscape and all nearby structures, which is not unexpected for a billboard. The lease agreement specifically granted to SignAd the right to locate and maintain the billboard in a position where it would "achieve optimum visibility to the traveling public."

SignAd also produced evidence that it has regularly maintained the billboard, which has been kept in a good, clean, painted, and safe condition since its construction. There was additional evidence that SignAd has regularly changed the advertising copy on the billboard, including one change that occurred approximately two weeks before the Kopycinskis conveyed their property. SignAd further showed that its nameplate is prominently displayed beneath the advertising copy on both sides of the billboard.

Based on all of this evidence, a reasonable factfinder could conclude that SignAd occupied a portion of the Kopycinskis' property in a manner that was visible, open, exclusive, and unequivocal. A reasonable factfinder could likewise conclude

10

that SignAd's interest in the Kopycinskis' property was discoverable upon a proper inquiry, and that the BJZ Parties were charged with constructive notice of that interest. *See Burford v. Pounders*, 199 S.W.2d 141, 142 (Tex. 1947) (a purchaser had constructive knowledge of a lease, and thus, was in no better position than the seller to defend against a claim by the lessee, who brought a suit for specific performance under his right of first refusal); *Outfront Media, LLC v. CYA Props., LLC*, No. 338335, 2018 WL 5305099, at *3 (Mich. App. Oct. 25, 2018) (per curiam) (a purchaser had constructive knowledge of a lease because a billboard was erected on the leased premises and "it is difficult to imagine what could be more open and manifest than a multi-ton, multi-story steel structure with [the lessee's] name on it in addition to a permit number that clearly tied the billboard to [the lessee]").

The BJZ Parties counter that they should not be charged with constructive notice because SignAd did not establish that it had exclusive use of the entirety of the Kopycinskis' property.[1] This argument is not persuasive. SignAd has never claimed to have an exclusive right to occupy the entirety of the Kopycinskis' property. Rather, SignAd's claim of exclusivity pertains to its leased premises, which represents just a portion of the Kopycinskis' property.

SignAd supported its claim of exclusively with the terms of the lease, which provided that SignAd has the right to access and maintain the leased premises, and to remove "obstructions of any kind which might limit the visibility of the sign structure(s) to the traveling public." The lease also prohibits the Kopycinskis and their successors from erecting any other advertising structures on the leased premises or any adjacent real estate owned or controlled by them. Based on this evidence, a

---

[1] The Kopycinskis conveyed two separate tracts of land in their warranty deed: the first totaled 1.352 acres, and the second was approximately 1 acre. In their lease agreement, the Kopycinskis only granted SignAd the right to use a smaller portion consisting of 0.65 acres.

reasonable factfinder could conclude that SignAd's occupation of the leased premises was exclusive. *Cf. Melvin R. Storm Family Partners, L.P. v. Northcutt*, No. 11-05-00402-CV, 2007 WL 2204170, at *3–4 (Tex. App.—Eastland Aug. 2, 2007, no pet.) (mem. op.) (a purchaser of 1,183 acres acquired the property with constructive notice that a lessee had exclusive possession of a portion consisting of 480 acres, even though the lease was unrecorded, where the lessee had posted signs indicating its use of the leased premises, and where the purchaser received other information regarding the lessee).

Even though SignAd had not publicly recorded a copy of its lease or a memorandum of its interest in the Kopycinskis' property at the time of the purchase, there was still sufficient evidence from which a reasonable factfinder could determine that the BJZ Parties had a duty to inquire into SignAd's interest, and that they had constructive notice of it. *See Liedeker v. Grossman*, 206 S.W.2d 232, 234 (Tex. 1947) ("Possession of property by a tenant at the time a contract of sale is executed, or at the time the premises are conveyed, puts the prospective purchaser or vendee on notice of the terms of the lease under which the tenant is holding; and this rule applies notwithstanding the fact that the lease contract is not of record."). This evidence accordingly meant that there was a genuine issue of material fact as to the BJZ Parties' affirmative defense, and that the BJZ Parties were not entitled to summary judgment on that defense.

## II.    Remaining Defenses

The BJZ Parties moved for summary judgment on four other defenses, which were equitable estoppel, failure of consideration, laches, and waiver. SignAd challenged all of those defenses in its summary-judgment response, and SignAd now repeats those challenges in its brief on appeal. The BJZ Parties have declined to address these defenses in their appellees' brief because, in an expression of candor,

12

they acknowledge that these defenses are less likely to provide a basis for affirming the trial court's judgment. Nevertheless, we must address them now because the trial court did not state its reasons for granting the summary judgment, and SignAd cannot obtain relief on appeal unless it successfully challenges every ground offered in support of the summary judgment.

## A.    Equitable Estoppel

The BJZ Parties argued in their motion that SignAd was equitably estopped from enforcing its rights under the lease agreement because SignAd's "failure to record [the lease agreement] induced [the BJZ Parties] to reasonably believe that the real property purchased from the Kopycinskis was not encumbered or subject to a lease agreement."

To prove this defense, the BJZ Parties were required to establish that (1) SignAd concealed material facts; (2) SignAd had actual or constructive knowledge of those facts; (3) SignAd intended that the BJZ Parties would act on the concealment; (4) the BJZ Parties did not have the knowledge or means of obtaining knowledge of the facts; and (5) the BJZ Parties suffered detrimental reliance. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 486 (Tex. 2017).

The third element involves a question of intent, which concerns a party's state of mind. Because reasonable people may draw differing conclusions about a party's state of mind, depending on the party's credibility, intent questions are generally inappropriate for summary judgment, especially in the absence of an admission. *See Drake Interiors, Inc. v. Thomas*, 544 S.W.3d 449, 456 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

The BJZ Parties did not produce any evidence that SignAd intended for a subsequent purchaser to believe that the Kopycinskis' property was unencumbered.

13

The evidence tended to show the exact opposite: as soon as SignAd learned of the sale, SignAd demanded its rights under the lease and recorded a memorandum of the lease in the real property records.

The BJZ Parties argued in their motion that equitable estoppel should still apply because the Kopycinskis falsely represented that their property was not encumbered and they knowingly concealed their lease with SignAd. This argument is meritless. The BJZ Parties cannot establish an estoppel defense against SignAd based on the conduct of the Kopycinskis.

We conclude that the BJZ Parties failed to satisfy their initial summary-judgment burden of proving their affirmative defense.

## B. Failure of Consideration

The BJZ Parties argued next that SignAd should not be entitled to enforce its rights under the lease agreement because the Kopycinskis failed to deliver unencumbered property, which allegedly had been their promise under the sales contract. This argument is erroneous because, once again, the BJZ Parties have attempted to establish an affirmative defense against SignAd based on the conduct of the Kopycinskis.

To establish the affirmative defense of failure of consideration, the BJZ Parties were required to prove that, because of some supervening cause after the sales contract had been reached, there was a failure of the promised performance, which may result from one party's failure to perform its obligations under the agreement. *See Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 181 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Because the BJZ Parties never even produced a copy of the sales contract or otherwise established that SignAd had an

14

obligation under it, we conclude that the BJZ Parties failed to satisfy their burden of showing that they were entitled to summary judgment as a matter of law.

## C. Laches

There are two elements to a laches defense: (1) an unreasonable delay by the party asserting legal or equitable rights, and (2) a good faith change of position by another to his detriment because of the delay. *See City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964).

The BJZ Parties argued that they satisfied the first element of this defense because SignAd "failed to assert [its] rights during the timeline outlined in the original lease agreement." The BJZ Parties further argued that they satisfied the second element because they made good faith improvements to the property during that delay. We need only address the BJZ Parties' argument under first element.

The lease agreement contained the following provision:

> **RIGHT OF FIRST REFUSAL:** During any term of this Lease and for a period of Ninety (90) days following any termination of this Lease Lessor grants Lessee the right of first refusal to match any offer acceptable to Lessor for the use or purchase of the Leased Premises. A written copy of any such third party offer received by Lessor shall be delivered to Lessee by certified mail-return receipt requested. Lessee shall then have twenty (20) business days from the date of receipt in which to match such offer by giving notice of acceptance to Lessor.

The BJZ Parties claim that SignAd waited too long to assert its rights under this provision, but they produced no evidence that the Kopycinskis had ever mailed SignAd a copy of the purchase offer, as the provision also required. Nor did the BJZ Parties produce any evidence that SignAd actually became aware of the conveyance shortly after it was completed, yet waited almost two years to assert its rights under the provision. Because the BJZ Parties did not show that SignAd unreasonably

15

delayed in asserting its legal rights, we conclude that they failed to establish their laches defense as a matter of law.

### D. Waiver

For their last defense, the BJZ Parties argued that SignAd waived its rights under the lease agreement because SignAd did not timely record its lease agreement, and because SignAd did not timely assert its rights after the BJZ Parties recorded their warranty deed from the Kopycinskis.

Waiver is defined as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *See Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam). There can be no waiver of a right if the party sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right. *Id.*

SignAd's initial failure to record its lease agreement does not conclusively establish an intent to waive its right of first refusal. In fact, SignAd's failure to record is just as consistent with its expectation that the Kopycinskis would perform under the lease agreement by providing SignAd with notice of any acceptable offers for purchase. For similar reasons, SignAd's failure to discover the conveyance from the Kopycinskis to the BJZ Parties does not conclusively establish an intent to relinquish its right of first refusal, when there was nothing in that failure that was inconsistent with an intent to continue relying upon such right.

Based on all of these reasons, we conclude that the BJZ Parties did not establish that they were entitled to summary judgment on any of their affirmative defenses. This conclusion means that the trial court erred by granting the summary judgment in favor of the BJZ Parties, and that we need not consider SignAd's

remaining challenges to the BJZ Parties' award of attorney's fees and to the trial court's miscellaneous rulings on certain motions and objections.

## CONCLUSION

The trial court's judgment is reversed and the case is remanded to that court for additional proceedings consistent with this opinion.

/s/ Tracy Christopher
   Chief Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.